MID-AMERICAN GROWERS, INC., Plaintiff-Appellee, v. THE DEPART-
MENT OF REVENUE, Defendant-Appellant.
Third District   No. 3—85—0392

Opinion filed April 30, 1986.

Neil F. Hartigan, Attorney General, of Springfield (Imelda R. Terrazino, Assistant Attorney General, of Chicago, of counsel), for appellant.

David L. Higgs, of Sutkowski & Washkuhn, of Peoria, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

This is a tax case in which the defendant, Illinois Department of Revenue, appeals from the order of the circuit court of Putnam County granting plaintiff's claim to certain farm machinery or equipment and farm chemical exemptions from the Illinois use tax.

Plaintiff, Mid-American, is a corporation organized for the purpose of growing and wholesaling indoor and outdoor vegetable and garden plants. Mid-American has a large warehouse and office building and approximately 16 acres of growing facility. The warehouse is separate and distinct from the growing facility, and in the warehouse the administrative, production, shipping, and maintenance activities of Mid-American are performed.

Generally described, the facility looks like a greenhouse. The framework is bowed-steel tubing anchored into a concrete base covered with a plastic specifically designed to aid in plant growth. The plastic cover diminishes with age and must be replaced every other year. The specific design of the plastic causes the plants to receive a diffused, rather than a direct, sunlight. This diffusion spreads the sunlight over a broader area and allows all the plants to receive the ultraviolet rays critical to their growth. The floor of the facility is a porous mixture of gravel and cement and is called the growing bed. The

growing bed is porous enough that water will not stand on it and serves to absorb the sunlight and hold the heat to be released for the plants' benefit at night. In some instances the plants sit directly on the growing bed and in others the plants sit on metal-mesh tables two feet above the bed.

In a portion of the facility are two banks of artificial light fixtures. These allow Mid-American to grow plants in the winter months when there is not enough natural sunlight. Other systems within the facility, although not in issue, are a sprinkling system, a misting system, a fogging system, a cooling system, a heating system, and a shading system.

The Illinois use tax is a tax upon the privilege of using within this State tangible personal property which is purchased at retail outside the State. The purpose of the use tax is to compensate for the constitutional limitations of the sales tax and to prevent evasion of the sales tax by imposing a tax at the same rate and on the same base as that imposed by the sales tax law, the taxable event being the use, storage, or consumption of property within the State, rather than the sale of such property.

■ The fundamental theory of our tax structure is that all taxable property should bear its fair share of the cost and expense of government. Exemption from taxation can arise only from statutory grant, and the universal rule is that a tax-exemption provision is to be construed strictly against the person claiming the exemption, in the absence of expressed legislative intent that the exemption is to be construed otherwise. Exemption from taxation cannot be left to or rest upon implication; every reasonable doubt must be resolved in favor of the taxing power and against exemption, the presumption being against any surrender of taxing power in favor of any particular property or class of property unless the legislature has indicated a deliberate purpose to do so. 68 Am. Jur. 2d, *Sales and Use Taxes* sec. 217 (1973).

At issue is the taxability under section 3 of the Use Tax Act (Ill. Rev. Stat. 1983, ch. 120, par. 439.3) of the materials used to construct the facility, the lighting system, the metal-mesh tables, and the carts used within the facility, and the chemical used to shade the growing plants. Section 3 reads in part as follows:

> "Sec. 3. A tax is imposed upon the privilege of using in this state tangible personal property, \*\*\* other than farm chemicals, \*\*\* other than farm machinery and equipment costing $1000 of [*sic*] more both new and used and including that manufactured on special order, certified by the purchaser to be

used primarily for production agriculture, including any individual replacement part for such machinery and equipment which part costs in excess of $1000, *** purchased at retail from a retailer." Ill. Rev. Stat. 1983, ch. 120, par. 439.3.

■ Because it is undisputed that Mid-American's operations involve "production agriculture" as that term is defined by statute (Ill. Rev. Stat. 1983, ch. 120, par. 439.3), the first issue in this case is whether under section 3 the facility is "farm machinery and equipment" within the contemplation of the Illinois legislature and the statute. If it is not farm machinery or equipment, the plaintiff is not eligible for the use tax exemption and the claimed exclusion must be denied. Conversely, if the facility is farm machinery or equipment under this particular statute, then the plaintiff is entitled to the claimed exclusion, the exact dollar amount of which is not in dispute. For the reasons stated, this court finds this issue against the plaintiff taxpayer.

As indicated, the issue with which we are dealing is the meaning of the term "farm machinery and equipment" as used, but not defined, in the Use Tax statute. The general rule that exemptions are to be strictly construed against the claimant calls for no strained construction adverse to the real intention of the legislature and requires a normal and reasonable construction. Construction statutes provide that words and phrases shall be taken in their plain or ordinary sense. Such is also the judicially established rule. To hold this facility a machine would result in a strained construction of the statute.

Plaintiff maintained that the "growth facility" is a "machine" that contributes to the production agriculture process since it allows sunlight to be diffused throughout the facility, that the "growth facility" is "specialty lighting equipment." Plaintiff cites *Wisconsin Department of Revenue v. Greiling* (1983), 112 Wis. 2d 602, 606, 334 N.W.2d 118, for the holding that a greenhouse is a machine used in floriculture: " 'Its purpose is to regulate the sunlight and the atmosphere and the temperature ***. The structure itself acts as a piece of machinery ***.' " We find *Grieling* unpersuasive. To be sure, the facility participated in the production of growing plants, but to characterize it as a machine on this account would distort the commonly understood meaning of that term. To hold that the definition of machines can be construed to include a greenhouse would allow any building or structure within which a production process is completed to be classified as a machine.

Plaintiff further cited three cases, *Oakdell, Inc. v. United States* (CT CL 1978), 78—2 V.S.T.C., par. 9730, *Thirup v. Commissioner of*

*Internal Revenue* (7th Cir. 1974), 508 F.2d 915, and *Stuppy, Inc. v. United States* (W.D. Missouri 1978), 454 F. Supp. 1378, for their holdings that for investment tax purposes a greenhouse is not a building. These courts did not hold that a greenhouse is a "machine," and neither will we. In terms of the Mid-American facility's physical appearance and function it was a building in the ordinary sense of that word. It had a tubular steel frame, porous concrete floors, and a plastic roof and walls which completely enclosed a large volume of space. It was built over concrete foundations. The materials of which it was constructed were common building components and the structure was somewhat permanent in nature. It had plumbing, heating, cooling and lighting systems. Mid-American employees regularly spent time inside the structures, engaging in a broad range of activities related to processing commercial vegetables and other plants. None of these characteristics are associated with "machines" as that term is commonly understood.

Construction materials used in the production of greenhouse-like structures, which, when completed become a part of realty, have never before in this State been held to be exempt or excluded from the use tax as "farm machinery or equipment used primarily for production agriculture." Under the doctrine of separation of powers, courts may not legislate or rewrite or extend legislation. If a greenhouse-like structure is to be classified farm machinery or equipment for the purpose of the Use Tax statute, that is a matter for the legislature. The courts have no right to expand the terms of the instant statute.

■ The next issue in this case is whether the lighting system purchases are exempt from use tax. As previously mentioned, Mid-American artificially regulates the lighting within a certain portion of the facility. Lighting fixtures in blocks of 40 work together as a unit and operate off of the same clock-type switch. They are arranged and spaced to provide the total amount of light needed for optimum growth of the plants.

It cannot be disputed that the lighting fixtures constitute a machine for purposes of the farm-machinery-and-equipment exemption. The use tax regulations incorporate by reference the provisions of all retail occupation tax regulations not incompatible with the Use Tax Act. (Use Tax Reg. 150.1201.). ROT Regulation 130.305(i) provides for the exemption of "specialty heating or lighting equipment specifically required by the production process, *i.e.* ultraviolet lights."

Under the Use Tax statute, the threshold requirement in respect of a farm machine requires that the machinery cost $1,000 or more.

Here, the lighting fixtures were purchased, installed, and are utilized as a single unit. Defendant contends plaintiff has grouped individual purchases and that an interpretation of the statute to allow "grouping" of purchases would encourage avoidance of the tax through multiple purchases at one time. We find little merit in defendant's contention. The light fixtures function as a unit, they are interconnected and turn on and off together, and they are arranged and spaced to provide the light needed to grow the plants. No single fixture can perform this function. The cost of the lighting system exceeded $1,000, and as such, the purchase is exempt from the use tax under the "farm machinery and equipment exemption."

■ A corollary issue in this case is whether the wheeled, wire-mesh tables purchased are exempt from the use tax. The tables are placed atop a rail system affixed to the floor of the facility. This system stands approximately two feet above the growth beds and allows the plants to be moved throughout the facility. The system further allows heat to be circulated underneath the plants, rather than forcing warmed air down through the plants, aiding in the plant production. Individually, the tables cost less than $1,000, however, plaintiff maintained and the circuit court held, the price of the entire system is to be considered in respect of the $1,000 threshhold requirement. The system itself consists of 400 tables and corresponding amounts of saddles, wheels, and rails, and all 400 tables are required for the system to be effective. The system is not available for purchase in the open market. Here, Mid-American purchased the component parts and assembled the system within the facility. The system, which creates a controlled environment the same for all plants within an area, functions as a unit, and as such, the purchase is exempt from the use tax under the farm machinery and equipment exemption.

The third issue for review is whether the carts used for protecting the plants during shipment qualify under the farm-machinery-and-equipment exemption. Defendant contends the carts are not exempt from use tax because they are not used "primarily for production agriculture" but are used for transporting the plants. The carts are made of steel, have multiple trays, wheels, and are not motorized. Mid-American uses the carts for the two-fold purpose of working on the plants prior to shipment and to protect the plants in shipping. The carts do not remain with the customers but are returned to the facility following shipment. Each of the carts cost in excess of $1,000.

Illinois Department of Revenue Regulation 130.305(f) provides in part when defining production agriculture that "[a]ctivities such as *** the operations involved in the storing or transporting of crops"

are not included. Defendant, in his argument contends the predominate use of the carts is for transporting the plants, and thus, under the regulation "operations involved in transporting of crops" are not production agriculture and do not qualify for the exemption. We believe the record establishes the carts, while indirectly an aspect of the transportation process, are used primarily for the production agriculture processes, and as such are eligible for exclusion from use taxes under the farm-machinery-and-equipment exemption.

■■ The last issue under consideration is whether or not the chemical shading compound sprayed directly onto the plastic shell of the facility was exempt from the use tax as a farm chemical used primarily for production agriculture. Although the term "farm chemical" is not statutorily defined, ROT Reg. 130.1955 provides:

"(b) Farm chemicals include any chemical product used in the production of crops that are to be sold, ***."

Defendant contends the shading chemical used by Mid-American does not constitute a farm chemical because it was not used for production of crops but rather was used for production of flowers and plants. We find the Illinois legislature has defined "production agriculture" in the statute as to include floriculture and horticulture in addition to raising the crops. ROT Reg. 130.305 in turn defines the term horticulture to mean the business of producing vegetables, vegetable plants and nursery stock and the term floriculture to mean the business of producing flowers, Christmas trees, and other decorative plants. As such, the vegetable and garden plants produced by Mid-American constitute crops within the meaning of that term and hence the shading chemical used to regulate the amount of sunlight the plants are exposed to is a chemical used in connection with raising of crops and accordingly is a chemical constituting a "farm chemical" under the statute.

For these reasons, the judgment finding Mid-American's purchase of construction materials exempt from use tax pursuant to the farm machinery and equipment exemption is reversed. In all other aspects the judgment is affirmed.

Reversed in part. Affirmed in part.

HEIPLE and WOMBACHER, JJ., concur.