**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY, | : | | |
| | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 14-2056 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 33, 38 |
| | : | | |
| ENVIRONMENTAL PROTECTION AGENCY, | : | | |
| | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**GRANTING IN PART AND DENYING IN PART DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S RENEWED CROSS-MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

Plaintiff Public Employees for Environmental Responsibility ("PEER") brings this Freedom of Information Act ("FOIA") suit seeking records from the Environmental Protection Agency ("EPA") concerning EPA's involvement with "suspected or actual toxic contamination at schools in the Santa Monica Malibu Unified School District" ("SMMUSD"). Compl. ¶ 5, ECF No. 2. In a prior Memorandum Opinion, this Court determined that EPA had appropriately withheld a small number of documents.[1] *Pub. Emps. for Envtl. Responsibility v. EPA*, 213 F. Supp. 3d 1, 22–24 (D.D.C. 2016). Finding, however, that EPA had not sufficiently explained its refusal to release most of the challenged records, the Court directed the agency to revise its

---

[1] Specifically, the Court determined that EPA had properly withheld PRD 538, 935, 1438, and 1575 pursuant to FOIA Exemption 5 and the attorney-client privilege and PRD 367 pursuant to FOIA Exemption 6. *Pub. Emps. for Envtl. Responsibility*, 213 F. Supp. 3d at 22, 26.

submissions to permit judicial consideration of whether the documents are protected by the claimed FOIA exemptions. *See id.* at 16. Since the Court issued its first opinion, the dispute has narrowed to nineteen documents, EPA has submitted supplemental *Vaughn* indices and additional declarations, and the Court has inspected all nineteen disputed documents *in camera*. Now before the Court are the parties' renewed cross-motions for summary judgment. For the reasons set out below, the Court grants the agency's motion for summary judgment except as to PRD 260, 1095, 1108 and 1617, which EPA must disclose in full, and PRD 940 and 1449, which EPA must disclose in part.

## II. BACKGROUND

In August 2014, PEER submitted a request for records to EPA Region 9, pursuant to FOIA, 5 U.S.C. § 552. *See* Def.'s Statement of Material Facts ("EPA Statement") ¶ 1, ECF No. 18-1; Pl.'s Statement of Material Facts ("PEER Statement") ¶ 1, ECF No. 20. Specifically, PEER requested:

> [E]mails and other written communications and notes of all communications from October 1, 2013 to the present concerning or referencing suspected or actual toxic contamination with [polychlorinated biphenyls ("PCBs")] between named EPA employees and any other EPA employees and (1) Senator Barbara Boxer, any member of her staff, or the staff of the Senate Environment and Public Works Committee which she chairs; (2) named members of the SMMUSD School Board; (3) named members of the Malibu City Council or the City Council as a group.

EPA Statement ¶ 1; PEER Statement ¶ 1. PEER also sought a fee waiver, which EPA granted. *See* Decl. of Steven Armann ("Armann Decl.") ¶ 16, ECF No. 18-3; PEER Statement ¶ 2. Months later, PEER brought this suit, alleging that EPA had failed to provide any records, as required by FOIA. *See* Compl. ¶¶ 1, 7. Soon after the Complaint was filed, EPA responded to PEER's request by releasing a group of responsive documents, but withholding others pursuant

to Exemptions 5 and 6 of FOIA. *See* Armann Decl. ¶ 17; EPA Statement ¶ 4; PEER Statement ¶ 4. Subsequent discussions between PEER and EPA led to the release of additional documents—some produced in full, and others partially redacted. *See* Armann Decl. ¶¶ 19–21; EPA Statement ¶¶ 5–7; PEER Statement ¶ 5. Thereafter, the parties filed cross-motions for summary judgment.

On September 30, 2016, this Court denied PEER's motion for summary judgment and granted in part and denied in part the EPA's cross-motion. *See Pub. Emps. for Envtl. Responsibility*, 213 F. Supp. 3d at 26. In their motions, the parties had addressed three categories of documents: (1) documents withheld pursuant to Exemption 5 as being subject to the deliberative process privilege, (2) documents withheld pursuant to Exemption 5 as being subject to the attorney–client privilege, and (3) a document withheld pursuant to Exemption 6 as a record implicating the privacy interests of an EPA employee. *See id.* at 10–11, 19, 25.

The Court found that EPA had met its burden of showing that the document withheld under Exemption 6 was proper and that four records were properly withheld as privileged attorney-client communications. *See id.* at 22–26. The Court held, however, that EPA's *Vaughn* index[2] was inadequate in certain respects and did not permit the Court to assess whether documents were properly withheld under the deliberative process privilege or whether certain other records were properly withheld under Exemption 5 for attorney-client privilege. *Id.* at 16. Because of deficiencies in the *Vaughn* index, the Court also could not assess whether EPA had

---

[2] As the Court explained in its prior Opinion, a "*Vaughn* index"—named for the case *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)—contains the agency's justification for invoking a particular FOIA exemption. *See Pub. Emps. for Envtl. Responsibility*, 213 F. Supp. 3d at 9.

met its burden of showing that it had released all reasonably segregable, nonexempt factual material.  *See id.* at 24.

The Court, in its discretion, allowed EPA an opportunity to supplement its *Vaughn* index.  *See id.* at 16–17.  Specifically, it directed that EPA's supplemental submissions "must show, at the least: '(1) the nature of the specific deliberative process involved, (2) the function and significance of the document in that process, and (3) the nature of the decisionmaking authority vested in the document's author and recipient.'"  *Id.* at 18–19 (quoting *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 189 (D.D.C. 2013)).

EPA has now supplemented its *Vaughn* index, and the parties have narrowed their dispute to nineteen documents, all of which have been reviewed by the Court *in camera*.  *See* EPA *Vaughn* Index 5/11/17, ECF No. 43-2; Order (Oct. 5, 2017) (directing Defendant to submit disputed records for *in camera* review), ECF No. 46; EPA Notice of *Ex Parte In Camera Filing*, ECF No. No. 47.  Now before the Court are the parties' renewed cross-motions for summary judgment.  *See* Def.'s Renewed Mot. Summ. J. ("EPA Mot."), ECF No. 33; Pl.'s Renewed Cross-Mot. Summ. J. ("PEER Mot."), ECF No. 38.

### III.  LEGAL STANDARD

FOIA "sets forth a policy of broad disclosure of Government documents in order 'to ensure an informed citizenry, vital to the functioning of a democratic society.'"  *FBI v. Abramson*, 456 U.S. 615, 621 (1982) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)).  The Act mandates release of properly requested federal agency records, unless the materials fall squarely within one of nine statutory exemptions.  *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011); *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2011) (citing 5 U.S.C. § 552(a)(3)(A), (b)).  "FOIA cases typically and appropriately

are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)). The agency is entitled to summary judgment if no material facts are genuinely in dispute and the agency demonstrates "that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information." *Competitive Enter. Instit. v. EPA*, 232 F. Supp. 3d 172, 181 (D.D.C. 2017). "This burden does not shift even when the requester files a cross-motion for summary judgment because 'the Government ultimately has the onus of proving that the documents are exempt from disclosure,' while the 'burden upon the requester is merely to establish the absence of material factual issues before a summary disposition of the case could permissibly occur.'" *Hardy v. ATF*, 243 F. Supp. 3d 155, 162 (D.D.C. 2017) (brackets omitted) (quoting *Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 904–05 (D.C. Cir. 1999)).

To carry its burden, the agency must provide "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of the withheld document to which they apply." *Electronic Privacy Info. Ctr. v. U.S. Drug Enforcement Agency*, 192 F. Supp. 3d 92, 103 (D.D.C. 2016) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)). In conducting its review, a court may also rely on its own *in camera* examination of disputed documents to determine whether they were properly withheld under the claimed statutory exemptions. *See* 5 U.S.C. § 552; *see also, e.g.*, *Citizens for Responsibility and Ethics in Washington v. Nat'l Archives and Records Admin.*, 715 F. Supp. 2d 134, 140–42 (D.D.C. 2010) (relying on the Court's *in camera* review to resolve whether documents had been properly

withheld).  This Court reviews the agency's explanations *de novo*, and will endorse an agency's decision to withhold information if the justification for invoking a FOIA exemption "appears 'logical' or plausible.'"  *Pinson v. U.S. Dep't of Justice*, 245 F. Supp. 3d 225, 239 (D.D.C. 2017) (quoting *Wolf v. CIA*, 473 F.3d 370, 374–75)).  Nonetheless, "exemptions from disclosure must be narrowly construed . . . and conclusory and generalized allegations of exemptions are unacceptable."  *Morley v. CIA*, 508 F.3d 1108, 1114–15 (D.C. Cir. 2007) (citation and internal quotation marks omitted).

## IV.  ANALYSIS

EPA contends that all nineteen disputed documents are protected from disclosure under FOIA Exemption 5's deliberative process privilege.  PEER disagrees, arguing that (1) EPA has failed to justify its withholdings under Exemption 5 and (2) some of the documents contain segregable factual material that is subject to disclosure.

### i. Applicability of FOIA Exemption 5

Exemption 5 permits an agency to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552 (b)(5).  It incorporates the deliberative process privilege, which "protects 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated.'" *Loving v. U.S. Dep't of Def.*, 550 F.3d 32, 38 (D.C. Cir. 2008) (*Dep't of Interior v. Klamath Water Users Protective Ass'n ("Klamath Water")*, 532 U.S. 1, 8 (2001)).  "The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its

object is to enhance 'the quality of agency decisions,' by protecting open and frank discussion among those who make them within the Government.'" *Klamath Water*, 535 U.S. at 8–9 (internal citation omitted) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1984)). It also "helps to prevent premature disclosure of proposed policies and protects against public confusion through the disclosure of documents suggesting reasons for policy decisions that were ultimately not taken." *Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 258–59 (D.D.C. 2004).

"To fall within the deliberative process privilege, materials must bear on the formulation or exercise of agency policy-oriented *judgment*." *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1435 (D.C. Cir. 1992). A record only qualifies for withholding if it is both "predecisional" and "deliberative." *Access Reports v. U.S. Dep't of Justice*, 926 F.2d 1192, 1194 (D.C. Cir. 1991). "A document is predecisional if it is generated 'before the adoption of an agency policy.'" *McKinley v. FDIC*, 744 F. Supp. 2d 128, 138 (D.D.C. 2010) (quoting *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)). Records are "deliberative" if they reflect "the give-and-take of the consultative process." *Coastal States Gas Corp.*, 617 F.2d at 866. "[T]o come within the privilege and thus within Exemption 5, the document must be a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn*, 523 F.2d at 1143–44. The key question in determining whether the material is deliberative "is whether disclosure of the information would 'discourage candid discussion within the agency.'" *Access Reports*, 926 F.2d at 1195 (quoting *Dudman Commc'ns Corp. v. U.S. Dep't of Air Force*, 815 F.2d 1565, 1567–68 (D.C. Cir. 1987)).

To meet its burden, an "agency must establish 'what deliberative process is involved, and the role played by the documents in issue in the course of that process.'" *Senate of P.R. v. U.S. Dep't of Justice*, 823 F.2d 574, 585–86 (D.C. Cir. 1987) (quoting *Coastal States Gas Corp.*, 617 F.2d at 868). "In addition to explaining the 'function and significance of the document(s) in the agency's decisionmaking process,' the agency must describe 'the nature of the decisionmaking authority vested in the office or person issuing the disputed document(s), and the positions in the chain of command of the parties to the documents.'" *Elec. Frontier Found. v. U.S. Dep't of Justice*, 826 F. Supp. 2d 157, 168 (D.D.C. 2011) (quoting *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 258 (D.C. Cir. 1982)). The Court may also rely on its own *in camera* inspection of documents to discern whether the deliberative process privilege applies. *See Phillippi v. CIA*, 546 F.2d 1009, 1012–13 (D.C. Cir. 1976) ("It is clear that the FOIA contemplates that the courts will resolve fundamental issues in contested cases on the basis of in camera examinations of the relevant documents."); *see also, e.g.*, *Citizens for Responsibility and Ethics in Wash.*, 715 F. Supp. 2d at 142.

## A.     Documents Properly Withheld Under Exemption 5

EPA claims that all nineteen disputed documents contain deliberative communications about possible approaches to the issue of PCBs at schools in the SMMUSD. *See* EPA *Vaughn* Index 5/11/17, ECF No. 43-2. Having reviewed the records *in camera*, the Court agrees that PRD 240, 642, 827, 890, 940, 954, 1033, 1167, 1352, 1378, 1449, 1836, 1888, 1890, and 1966 were properly withheld under the deliberative process privilege. The redacted material in each document contains internal agency deliberations that evaluate proposed policy options, suggest next steps for the agency, or seek advice from other EPA components about policy alternatives. Based on a combination of EPA's revised *Vaughn* index and supplemental declarations and the

Court's *in camera* review of these documents, EPA has adequately supported its application of FOIA Exemption 5 with respect to these documents. The Court grants summary judgment to EPA as to these records.[3]

## B. Documents Improperly Withheld Under Exemption 5

Based on the Court's consideration of the entire record, four disputed documents—specifically, PRD 260, 1095, 1108, and 1617—are not properly withheld pursuant to the

---

[3] PEER's arguments in favor of disclosure of the disputed records primarily focus on inadequacies in EPA's justifications for withholding them. Because the Court personally reviewed each document and verified the applicability of Exemption 5 to the aforementioned records, no elaborate, individualized discussion of why each record is properly withheld is called for. The Court will, however, explain its conclusion as to PRD 240, which was primarily disputed on the grounds that drafting comments cannot be withheld unless explicitly linked to a policy deliberation or decision. *See* PEER Mot. at 3–6.

According to EPA, redacted portions of PRD 240 "contain[] staff impressions and recommendations concerning how to draft [a] field report," which "would be used by EPA to plan further action (if needed) at [SMMUSD]." *See Vaughn* Index 5/11/17, ECF No. 43-2. EPA contends that disclosure of redacted portions of this record may stifle internal discussions regarding "how reports are drafted and what is included in reports" and could cause public confusion "by disclosure of reasons, rationales and conclusions that were not in fact ultimately part of the Field Report." *Id.* PEER disputes EPA's application of Exemption 5, arguing primarily that EPA has not shown that the record is deliberative in nature and that this sort of document likely includes factual information that is not protected by the privilege. PEER Mot. at 3–6.

Having reviewed the record, the Court confirms that it does not contain technical, factual material, but rather offers editorial suggestions concerning how to present information in a report. Generally, employee recommendations and suggestions are covered by the deliberative process privilege. *See Coastal States Gas Corp.*, 617 F.2d at 866. And our Circuit Court has clarified that editorial recommendations are protected. In the context of draft agency histories, for example, the Circuit has explained that Exemption 5 applies because "'disclosure of editorial judgments' made during the agency's deliberative process 'would stifle the creative thinking and candid exchange of ideas necessary to produce good historical work.'" *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 466 (D.C. Cir. 2014) (quoting *Dudman Commc'ns Corp v. Dep't of Air Force*, 815 F.2d 1565, 1569 (D.C. Cir. 1987)); *see also Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048–49 (D.C. Cir. 1980). These same observations apply to PRD 240. Discussions regarding what information to include in a final report and how to present that information is sufficiently predecisional and deliberative to justify withholding under Exemption 5.

deliberative process privilege.   The Court will assess EPA's claims regarding each document and explain why the asserted exemption does not apply.[4]

### 1.  PRD 260

PRD 260 is a chain of emails entitled "2009 PCB Dose Estimate Tool Indoor Air." *Vaughn* Index 5/11/17 at 2–3.  EPA claims that redacted portions of the document "deliberate about the EPA's position on the IRIS reference dose posed by PCBs due to indoor air exposure." *Id.*  The document is predecisional, EPA claims, because it communicates about proposed testing and "the appropriate reference dose level of PCBs," for a tool that may be used for testing in SMMUSD.  *Id.*  Furthermore, EPA states that "release of this information would have a chilling effect on the Agency's ability to have open and frank discussions among its staff and other Agency personnel concerning how best to address PCBs in schools" and that release could cause public confusion.  *Id.*

The Court's *in camera* review of PRD 260 reveals that it contains only clarifications and internal explanation about why the IRIS reference tool had been designed a certain way.  The record features no discussion about future use or modification of the tool.  Indeed, the email exchange reveals no present challenge for agency employees to attempt to solve.  Nor does the document expose prior communications or information about the deliberative process within the agency at the time the tool was created. This Court has explained that "[t]he most basic requirement of the [deliberative process] privilege is that a document be *antecedent* to the

---

[4] EPA withholds portions of these records as nonresponsive.  Our Circuit Court has explained that FOIA does not permit an agency to parse a responsive record to redact specific information within it as non-responsive.  Rather, all information within a responsive record is subject to disclosure unless one of the FOIA exemptions specifically shields it.  *Am. Immigration Lawyers Assoc. v. Exec. Office of Immigration Review*, 830 F.3d 667, 677–79 (D.C. Cir. 2016). Because PEER does not challenge EPA's withholdings on this basis, the Court will not address that issue *sua sponte*.

adoption of an agency policy." *Judicial Watch, Inc.*, 297 F. Supp. 2d at 260; *see also Sears, Roebuck & Co.*, 421 U.S. at 152 (explaining the public interest in release of postdecisional communications). As this record explains design choices that had already been made, it cannot be called predecisional and it therefore cannot be shielded under Exemption 5.

### 2. PRD 1095

PRD 1095 is an email exchange among EPA staff which "discuss[es] and comment[s] on Toronto PCB study and SFEI studies on PCB caulk and the studies['] applicability to Bay Area buildings." *Vaughn* Index 5/11/17 at 9, ECF No. 43-2. EPA argues that the withheld information is protected because "it contains staff impressions and recommendations concerning the studies and their applicability to PCB found in the grout at Malibu." *Id.* Further, EPA claims the record is predecisional because "the Agency had not yet responded to the questions posed by the reporter and was seeking information in order to respond to the question." *Id.* The document bears no apparent connection to any agency decisionmaking process. Even the unredacted record does not reveal anything about "the reporter" who was "seeking information" that EPA mentioned in its *Vaughn* Index. The Court cannot readily assume that the document is nonetheless related to some agency decision even though EPA relies on only this conclusory claim to demonstrate the purportedly predecisional nature of this record. As the Court cannot tie the EPA's staff members' comments on the external report to any internal policy decision or decisionmaking process, it cannot condone EPA's application of the deliberative process privilege with regard to this document.

### 3. PRD 1108

According to EPA's *Vaughn* Index, the two sentences redacted from PRD 1108 "contain questions related to [a] study and its conclusions." *Vaughn* Index 5/11/17 at 10, ECF No. 43-2.

More precisely, the *Vaughn* Index states that the two sentences "contain [] staff impressions and recommendations concerning exposure to PCBs and its relationship to cancer as discussed" in the study. *Id.* PEER disputes EPA's statements, contending that the asserted rationales do not appear to apply to this record. PEER Mot. at 14, ECF No. 38. Having reviewed the record *in camera*, the Court discerns no relationship to any decisionmaking process and no connection between these communications and any policy or proposed policy of the agency. Because these communications are neither predecisional nor deliberative, the deliberative process privilege is inapplicable to PRD 1108.

### 4. PRD 1617

PRD 1617 is an email exchange entitled "Emission Rates from Caulk." *Vaughn* Index 5/11/17 at 15–16, ECF No. 43-2. EPA's *Vaughn* Index explains that this record features communications among EPA scientists and managers about "emission rates from caulks." *Id.* at 15. In particular, EPA staff discuss a caulk study and how to analyze the results of the study, including ways to calculate PCB values in caulk. *See id.* EPA contends that this record is predecisional because "[t]hese discussions were held prior to any decision regarding the dust samples at Malibu and contain back-and-forth on the proper way to interpret [the] study." *Id.* at 16. EPA adds that it "had not yet made a final position based on the test results." *Id.* For its part, PEER asserts that EPA has not identified any decisionmaking process to which these communication are associated "other than the cryptic and uninformative 'final position based on the test results.'" PEER Mot. at 18 (quoting *Vaughn* Index 5/11/17 at 16), ECF No. 43-2.

The Court agrees with PEER that EPA did not identify in its Vaughn Index and declarations any particular decisionmaking process for which PRD 1617 was prepared. EPA's reference to a "final position based on the test results" is untethered to any decisionmaking

process and is insufficient by itself to demonstrate that these communications are predecisional. EPA's suggestion that this document played some role in decisions regarding dust samples at Malibu is also insufficient. A document is not predecisional under Exemption 5 unless it was "generated as part of a definable decision-making process." *Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of the Fed. Reserve System*, 762 F. Supp. 2d 123, 136 (D.D.C. 2011). An agency's post hoc realization that past deliberations might bear on new questions does not satisfy this requirement.

Having inspected the record *in camera*, the Court finds that the redacted materials contain explanations and clarifications relating to published EPA studies. As the Court explained above, "the deliberative process privilege does not protect "documents that merely state or explain agency decisions." *Judicial Watch, Inc. v. Dep't of Health and Human Servs.*, 27 F. Supp. 2d 240, 245 (D.D.C. 1998); *see also Nat'l Labor Relations Bd.*, 421 U.S. at 152 (explaining that post-decisional communications not protected by FOIA Exemption 5). PRD 1617 may not be withheld pursuant to the deliberative process privilege as the communications are neither predecisional nor deliberative.

### ii. Segregability

Because "the focus of FOIA is information, not documents . . . an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Mead Data Cent., Inc.*, 566 F.2d at 260. Rather, FOIA requires the agency to release "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b); *see also Mead Data Cent., Inc.*, 566 F.2d at 260 ("It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions."). "Before approving the application of a FOIA exemption,

the district court must make specific findings of segregability regarding the documents to be withheld." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007).

PEER speculates that several disputed documents contain purely factual material that can likely be segregated from properly withheld information. *Cf. Army Times Publ'g Co. v. U.S. Dep't of Air Force*, 998 F.2d 1067, 1071 (D.C. Cir. 1993) ("Exemption 5 applies only to the deliberative portion of a document and not to any purely factual, non-exempt information the document contains."). PEER also challenges the adequacy of EPA's explanations for non-segregability. The Court agrees with PEER that EPA used boilerplate, conclusory language to describe its efforts to segregate nonexempt, factual material from exempt material. Nearly every *Vaughn* Index entry includes the exact same language on the question of segregability. To meet its burden, "[a]n agency must provide a 'detailed justification' and not just make 'conclusory statements' to support its segregability determination." *Goldstein v. IRS*, 2017 WL 4358674, at *12 (D.D.C. Sept. 29, 2017) (quoting *Mead Data Cent., Inc.*, 566 F.2d at 261). EPA's *Vaughn* Index and declarations fall well short of this hurdle.

When an agency has failed to support its segregability determination, a court may conduct its own *in camera* search for segregation non-exemption information. *See Mead Data Cent., Inc.*, 566 F.2d at 262. This Court's inspection of the documents disputed in this case confirms that most of the records do not feature reasonably segregable factual information. The sparse factual material present in most of the documents "reflects an 'exercise of discretion and judgment calls'" and its "exposure would enable the public to probe an agency's deliberative process." *Leopold v. CIA*, 89 F. Supp. 3d 12, 21 (D.D.C. 2015). Two documents—PRD 940 and PRD 1449—however, contain some segregable factual material that must be released. Save for

the first, second, and final two redacted sentences from PRD 940, EPA must release this document. EPA must also release the final two sentences currently redacted from PRD 1449.

## V. CONCLUSION

For the foregoing reasons, EPA's Renewed Motion for Summary Judgment is granted with respect to PRD 240, 642, 827, 890, 954, 1033, 1167, 1352, 1378, 1836, 1888, 1890, and 1966 and denied with regard to the other disputed documents. PEER's cross-motion for summary judgment is granted in full with respect to PRD 260, 1095, 1108 and 1617 and in part with respect to PRD 940 and 1449, which contain reasonably segregable factual information. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: December 11, 2017                                  RUDOLPH CONTRERAS
                                                         United States District Judge