2018 IL App (1st) 170455

FIRST DIVISION
June 29, 2018

No. 1-17-0455

| | | |
|---|---|---|
| CHICAGO TRIBUNE COMPANY, | ) | Appeal from the Circuit Court of |
| | ) | Cook County |
| Plaintiff-Appellee/Cross-Appellant, | ) | |
| | ) | |
| v. | ) | No. 16 CH 04992 |
| | ) | |
| COOK COUNTY ASSESSOR'S OFFICE, | ) | |
| | ) | Honorable Neil H. Cohen, |
| Defendant-Appellant/Cross-Appellee. | ) | Judge Presiding |

JUSTICE GRIFFIN delivered the opinion of the court.
Justices Harris and Mikva concurred in the judgment and opinion.

**OPINION**

¶ 1       The Chicago Tribune requested records from the Cook County Assessor's Office under

Illinois' Freedom of Information Act ((5 ILCS 140/1.1 *et seq*. (West 2016)). The Tribune

requested records that pertain to the valuation of residential, commercial, and industrial property

in Cook County for purposes of taxation. The Assessor's Office denied the FOIA request,

maintaining that the information sought was exempt from disclosure under the Act (see 5 ILCS

140/7(1)(f) (West 2016)). The Tribune filed this case, and the trial court ruled in its favor holding

that the requested information was subject to disclosure under FOIA and not subject to any

exemptions. The Assessor's Office appeals, and we affirm.

¶ 2                                    BACKGROUND

¶ 3     Plaintiff the Chicago Tribune Company sent a Freedom of Information request to defendant the Cook County Assessor's Office seeking to compel the Assessor's Office to produce records regarding its valuation of properties in Cook County. Specifically, the Tribune requested that the Assessor's Office turn over the spreadsheets and other records it uses to determine the value of properties for taxation purposes. The Assessor's Office denied the Tribune's Freedom of Information request, claiming that the "deliberative process exemption," sometimes also called the "preliminary records exemption," allowed the government to withhold the documents.

¶ 4     The Assessor's Office is responsible for valuing approximately 1.8 million parcels of Cook County property each year for taxation purposes. The Tribune requested that the Assessor's Office produce the spreadsheets used in the assessment of commercial and industrial properties and also that it produce residential property valuation reports that, in the Assessor's Office, are known as 65D reports. Both the spreadsheets and the 65D reports include the Assessor's Office's value of properties in Cook County for taxation purposes.

¶ 5     The Tribune subsequently also requested 65A reports which are township-level summaries of the 65D reports. The 65D reports contain information about a parcel of property such as the type of residence (townhouse, etc.), the square footage, and various other characteristics. After an analysis is done by the Assessor's Office, a value is assigned to the property and that value is put into the 65D report. The 65A reports take a more macro-level view; providing a breakdown by neighborhood and by class. The Tribune maintains that the preliminary records exemption claimed by the Assessor's Office does not apply to any of the requested records and, thus, that the documents have been improperly withheld.

¶ 6    In denying the FOIA requests by letter, the Assessor's Office maintained that the records sought by the Tribune amounted to the Office's "opinion of value." The Assessor's Office also stated that the requests sought "essentially our Office's employees' thought processes."

¶ 7    The Assessor's Office has a multi-step process for calculating and arriving at a property valuation. The first step conducted by the valuation department is that it runs a computerized regression model that compares a subject property to similar properties that have recently been sold. The result of running the models is a spreadsheet-type record in which properties are broken down by individual characteristics—attributes such as square footage, number of bathrooms, number of fireplaces, and the property's prior market value. Using the compiled data of sales files and characteristic files, a multiple regression analysis is conducted. The sales data and the characteristic data are all ultimately merged and all of that information is used in the subsequent analytical steps to arrive at the final valuation.

¶ 8    The next step after aggregating all the data and running it through the regression model is to look for outliers. "Outliers," for purposes of the analysts' review, are comparative properties where something looks out of the ordinary for valuation purposes, where the comparative property does not fit with the characteristics of the home being evaluated. Only approximately three to five percent of the properties register some type of an outlier. But if the Assessor's Office compares a property with another like property that has the same relevant characteristics but twice the estimated value, the outliers are edited out. The regression analysis is then rerun without any outlier data in order to create what the Assessor's Office deems to be the property's market value for taxation purposes. The newly-calculated proposed market values are included in the 65D report.

¶ 9    The 65D reports, with all fields filled in at this point, are hand checked by an analyst.

Changes are made by an analyst to roughly 20 or 25% of the properties, but once that analysis is completed, the 65D report and the newly-calculated current market value therein are considered final. The process for assessing the value of commercial and industrial properties is similar, and the results from assessing non-residential property are contained in spreadsheets that the Tribune also requested.

¶ 10    After its FOIA request was rejected, the Tribune filed its complaint alleging that the Assessor's Office was improperly withholding information that the public is entitled to view under FOIA. The Assessor's Office filed a motion to dismiss supported by the affidavits of two of its analysts, Alfonso Sarro and Mark Dwyer. Sarro and Dwyer were subsequently deposed about the processes for valuing property in Cook County. The deposition testimony and the affidavits generally describe the process set forth above regarding the Assessor's Office's valuation process. For both commercial and residential properties, the Assessor's Office maintains worksheets where data is contained about the character of the property. Recent sales data from nearby similar properties is also considered. Then, after an analyst reviews the proposed assessment and considers other factors such as appraisal tools, adjustments are made and a property value is set.

¶ 11    Based on the deponent-analysts' affidavits and deposition testimony and some other documentary evidence on file, cross-motions for summary judgment were presented to the trial court. The cross-motions called on the trial court to resolve the question of whether the spreadsheets valuing commercial and industrial property, the 65A reports, and the 65D reports are covered by the "deliberative process exemption" to FOIA.

¶ 12    The Assessor's Office took the position that, as one of its witnesses Mark Dwyer testified, the information requested by the Tribune is "the result of the analysts' research, data

collection, thoughts, impressions and experience." The Tribune on the other hand stated that "far from revealing the give-and-take of a deliberative process, [the requested documents] reflect factual data."

¶ 13    In a detailed written order, the trial court held that the records were not exempt from disclosure. The trial court explained that, even in light of the affidavits and deposition testimony, the requested documents do not contain any information that supports that the documents fall within the deliberative process exemption. The trial court further explained that the requested documents "do not in any way reveal the subjective personal position or opinion of any individual in the [Assessor's Office]" such that the preliminary records exemption would apply. The trial court found, in fact, that none of the documents revealed "any debate" or "deliberation," but instead found that the documents "contain factual information and the results of the [Assessor's Office's] valuation which are not covered under the deliberative privilege."

¶ 14    The trial court also awarded attorney fees to the Tribune. FOIA provides that a party that prevails in court when challenging the government's denial of a FOIA request is entitled to reasonable attorney fees and costs. 5 ILCS 140/11(i) (West 2016).

¶ 15    In a final order, the trial court awarded the Tribune the full amount of attorney fees and costs that were sought. The trial court also ordered that the summary judgment briefing, the evidence submitted therewith, and the transcripts of the testimonial evidence remain sealed pending appeal. An order was entered by this court sealing the briefs and the record submitted on appeal.

¶ 16    The Assessor's Office appeals the entry of summary judgment in the Tribune's favor. It requests that we reverse that order and enter judgment in its favor. The Assessor's Office also argues that we should set aside the award of attorney fees and costs because the petition was not

supported by sufficient evidence, and because the amount awarded was not calculated based on the prevailing market rate or the other factors that trial courts are required to consider. The Tribune filed a cross-appeal arguing that the files in this case should be unsealed.

¶ 17                                        ANALYSIS

¶ 18    We review a trial court's decision to grant summary judgment *de novo*. *Illinois Tool Works Inc. v. Travelers Casualty & Surety Co.*, 2015 IL App (1st) 132350, ¶ 8. Summary judgment is appropriate when the pleadings, depositions, admissions and affidavits, viewed in a light most favorable to the nonmovant, fail to establish that a genuine issue of material fact exists, thereby entitling the moving party to judgment as a matter of law. 735 ILCS 5/2-1005 (West 2012); *Fox v. Seiden*, 2016 IL App (1st) 141984, ¶ 12. However, when, as here, parties file cross-motions for summary judgment, they agree that no genuine issues of material fact exist and they invite the court to decide the case as a matter of law based on the record. *Casey's Marketing Co. v. Hamer*, 2016 IL App (1st) 143485, ¶ 11. The mere filing of cross-motions for summary judgment, however, does not obligate the court to grant the requested relief to either party. *Hagen v. Distributed Solutions, Inc.*, 328 Ill. App. 3d 132, 137 (2002). When cross-motions for summary judgment are filed as to the same issues and the trial court grants one party's motion and denies the other party's motion, the resulting order is final and appealable because it entirely disposes of the litigation. *Arangold Corp. v. Zehnder*, 187 Ill. 2d 341, 358 (1999).

¶ 19                          I. The Deliberative Process Exemption

¶ 20    The Assessor's Office maintains that the trial court erred in granting the Tribune's motion for summary judgment. Under FOIA, certain records and information are exempt from disclosure. See generally 5 ILCS 140/7 (West 2016). The Assessor's Office argues that the records that were requested were properly withheld under the "deliberative process exemption"

to FOIA (see 5 ILCS 140/7(1)(f) (West 2016)). Among the information exempt from inspection and copying is "[p]reliminary drafts, notes, recommendations, memoranda and other records in which opinions are expressed, or policies or actions are formulated." 5 ILCS 140/7(1)(f) (West 2016). The deliberative process exemption is also sometimes referred to as the preliminary records exemption. *Harwood v. McDonough*, 344 Ill. App. 3d 242, 247 (2003).

¶ 21    The Freedom of Information Act's purpose is to open government records to the light of public scrutiny. *Day v. City of Chicago*, 388 Ill. App. 3d 70, 73 (2009). Public records are presumed to be open and accessible. *Id*. Based on the legislature's clearly stated intent, FOIA's exemptions are to be read narrowly. *Peoria Journal Star v. City of Peoria*, 2016 IL App (3d) 140838, ¶ 11. So when a public body receives a proper request for information, it must comply with that request unless one of the narrow statutory exemptions applies. *Illinois Education Ass'n. v. Illinois State Board of Education,* 204 Ill. 2d 456, 463 (2003).

¶ 22    The deliberative process exemption is designed to protect the communications process in government agencies and encourage frank and open discussion among agency employees before a final decision is made. *State Journal-Register v. University of Illinois Springfield*, 2013 IL App (4th) 120881, ¶ 26. The public body has the burden of proving that the records in question fall within the exemption that it has claimed. *Stern v. Wheaton-Warrenville Community Unit School District 200*, 233 Ill. 2d 396, 406 (2009). When the government claims an exemption, it must prove that the exemption applies by clear and convincing evidence. 5 ILCS 140/11(f) (West 2016).

¶ 23    The General Assembly has set forth a clear public policy for the state of Illinois in consideration of the American constitutional form of government. That policy is that "all persons are entitled to full and complete information regarding the affairs of government." 5 ILCS 140/1

(West 2016). The General Assembly has concluded that access to governmental information is "necessary to enable the people to fulfill their duties of discussing public issues fully and freely, making informed political judgments and monitoring government to ensure that it is being conducted in the public interest." *Id*. "It is a fundamental obligation of government to operate openly and provide public records as expediently and efficiently as possible in compliance with this Act." *Id*.

¶ 24    The deliberative process exemption to the Illinois FOIA has been interpreted to be an equivalent to its corollary exemption in the federal Freedom of Information Act. *Day v. City of Chicago*, 388 Ill. App. 3d 70, 79 (2009). Our court has determined that this exemption is the equivalent of the federal "deliberative process" exemption, which applies to predecisional materials used by a public body in its deliberative process. *Id*. Thus, Illinois courts have looked to case law construing the federal Freedom of Information Act (5 U.S.C. § 552) to interpret our state's FOIA. *Harwood v. McDonough*, 344 Ill. App. 3d 242, 248 (2003); *Dumke v. City of Chicago*, 2013 IL App (1st) 121668, ¶¶ 14-15.

¶ 25    The Assessor's Office argues that it is entitled to judgment as a matter of law because the undisputed facts demonstrate that the preliminary records exemption applies. It relies on the uncontradicted deposition testimony and cites the statute to argue that the information qualifies as exempt because it: (1) is preliminary; and (2) contains expressions of opinions or formulations of policies or actions. We disagree with the Assessor's Office's proffered characterizations of the information requested. The information requested does not fit within the scope of the deliberative process exemption.

¶ 26    Again, the deliberative process exemption states that the government is entitled to withhold preliminary drafts, notes, recommendations, memoranda and other records in which

8

opinions are expressed, or policies or actions are formulated. 5 ILCS 140/7(1)(f) (West 2016). In this case, the requested records are final—not preliminary. The requested records are also not ones in which opinions are expressed or in which policies or actions are formulated—they are factual. They are the results of the assessment process. So the Assessor's Office's denial cannot be squared with the plain language of the deliberative process exemption. In addition, the Assessor's Office's rejection of the FOIA request in this case does not square with the purpose of the deliberative process exemption, and withholding the requested information is antithetical to the purpose of FOIA as a whole.

¶ 27 Contrary to being preliminary records, the Tribune clearly seeks the disclosure of final documents. The word "preliminary" in the deliberative process exemption refers to predecisional intra-agency communications. See *Harwood v. McDonough*, 344 Ill. App. 3d 242, 248 (2003)' *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975). In deposition testimony and in other places in the record, the Assessor's Office has admitted that the spreadsheets, the 65D records, and the 65A records, all become finalized documents at some point that simply memorialize factual data. In fact, the record reflects that the predecisional assessments are almost always "saved over" so that only the final reports actually exist. In fact, the FOIA request submitted by the Tribune specifically seeks valuations from the 2002 to 2015 tax years. Those assessments and the reports that contain them are obviously finalized, are not changing, and cannot possibly be described as preliminary.

¶ 28 In order to qualify for the deliberative process exemption, a document must be both predecisional in the sense that it is actually antecedent to the adoption of an agency policy, and deliberative in the sense that it is actually related to the process by which policies are formulated. *Enviro Tech International, Inc. v. U.S. E.P.A.*, 371 F.3d 370, 374 (7th Cir. 2004). The records at

issue here are not "preliminary" drafts, notes, recommendations or records, they are final factual findings. The Tribune is not asking for the blueprint on how the Assessor's Office makes decisions, it is asking for the documents that expressly show the decisions.

¶ 29    The policy reason for the deliberative process exemption is to encourage candid debates within agencies. *Id*. The government is entitled to withhold documents that reflect the agency's give-and-take leading up to its final decisions. *Donham v. U.S. Forest Service*, No. 07-CV-111-MJR, 2008 WL 2157167, at *4 (S.D. Ill. May 21, 2008). The exemption is designed to protect the quality of the process leading up to the government agency's decision—not the disclosure of the final reports after significant time has passed. See *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. at 151 ("it is difficult to see how the quality of a decision will be affected by communications with respect to the decision occurring after the decision is finally reached"). The Assessor's Office, the party that has the burden to show that the exemption applies, does not offer any explanation as to how internal discussions might be affected by the release of the requested information.

¶ 30    Documents reflecting data, like those at issue here, are not subject to exemption under the deliberative process exemption because they are not part of the predecisional, deliberative process. *State Journal-Register v. University of Illinois Springfield*, 2013 IL App (4th) 120881, ¶ 31. Just because adjustments are made to the property value assessments along the way does not mean that the information must fall within the exemption. Even if analysts make adjustments as the process continues, the data is the data. There is nothing in the record here that discloses the Assessor's Office's internal evaluations. The Tribune is not seeking the regression analysis's algorithmic code nor is it seeking the divulgement of how and why the analysts make the *predecisions* that they make—it just seeks the *results* of that process.

¶ 31    The evidence on file reveals that after the assessment process has run its course, the valuations are final; the valuations are not subject to further change. The valuations and the reports that contain them represent final agency decisions and contain no predecisional communications—only the finalized results of the analysis. Documents adopted as final agency policy are not protected from disclosure. *Watkins v. McCarthy*, 2012 IL App (1st) 100632, ¶ 36 (quoting *Harwood*, 344 Ill. App. 3d at 248). The documents sought by the Tribune here are final records, expressing final determinations, and do not reflect any predecisional deliberations so as to qualify as preliminary.

¶ 32    Moreover, the reports sought in this case contain purely factual assessment data, despite the Assessor's Office's protestations to the contrary. Purely factual material must be disclosed under FOIA once a final decision has been made, unless the factual material is inextricably intertwined with predecisional and deliberative discussions. *State Journal-Register*, 2013 IL App (4th) 120881, ¶ 27. In this case, all of the data at issue can be characterized as factual. Even when the Assessor's Office conducts its analysis and makes adjustments to property values based on the objective factual data, the ultimate result of that analysis produces another numerical fact—the property's taxable new market value.

¶ 33    The analysis starts with characteristics such as location, square footage, the number of bedrooms, the number of bathrooms—purely factual property characteristics. The information that is taken into account is all public and is gleaned from public records. The analysis proceeds by examining those purely factual characteristics which leads the Assessor's Office to produce another piece of factual data: the property's taxable market value. That information is discoverable under FOIA. See *Public Employees for Environmental Responsibility v. Environmental Protection Agency*, 288 F. Supp. 3d 15, 26 (D.D.C. 2017) (a final position based

on test results that is untethered to any decisionmaking process is insufficient by itself to demonstrate that these communications are predecisional); *Reilly v. U.S. Environmental Protection Agency*, 429 F. Supp. 2d 335, 352 (D. Mass. 2006) (even when information sought under FOIA reveals the inputs of a computer modeling simulation and, thus, some extent of the agency's thought process, the *results* of that computer modeling are not exempt under the deliberative process exemption).

¶ 34    The Assessor's Office argues that the Tribune is "not seeking these records because it wants to review a set of objective, empirical data," but rather that the Tribune "hopes to scrutinize the opinions and deliberations" that led to that data. But the fact that some of the final data could potentially be reverse engineered to shed light on decisionmaking does not make the factual data exempt. See, *e.g.*, *Reilly*, 429 F. Supp. 2d at 352 (it is true that, whenever facts are sought about an agency's activities, aspects of what the investigator deemed important are revealed in a way that everything could be considered deliberative. But lines must be drawn so that the narrow exemption does not overwhelm the presumption of disclosure). The purpose of FOIA is to give the public the information about which they have the right to know. 5 ILCS 140/1 (West 2016). We see no reason the factual data here should be exempt from disclosure under FOIA.

¶ 35    The deliberative process exemption does not justify the withholding of purely factual material, nor does it permit the government to withhold documents reflecting its final policy decisions. *Enviro Tech*, 371 F.3d at 374-75. Perhaps it is correct to say that the Tribune's FOIA requests seek *the results* of a deliberative process, but the Tribune asks for nothing other than the postdecisional final, factual product. The Assessor's Office does not point to anything in the requests or in the record that, if turned over, would demonstrate opinions or deliberations by its

employees, as opposed to just data. No information relating to internal debates or discussions is requested by the Tribune at all. The Assessor's Office has failed to demonstrate how the deliberative process exemption would protect the factual data it seeks to withhold.

¶ 36   FOIA explicitly states that "[i]t is a fundamental obligation of government to operate openly and provide public records as expediently and efficiently as possible[.]" 5 ILCS 140/1 (West 2016). In furtherance of that ideal, the General Assembly has stated that access to governmental information is "necessary to enable the people to fulfill their duties of discussing public issues fully and freely, making informed political judgments and monitoring government to ensure that it is being conducted in the public interest." *Id*. With the policy issues presented in this case, the public has a strong right to know about how they are being taxed by their government as opposed to the government's fairly meek interest in secrecy. The balance in this case weighs in favor of the public, and in favor of disclosure.

¶ 37   Property valuation, which results in the direct taxation of the citizenry, is a critical government purpose. "The fundamental theory of our tax structure is that all taxable property should bear its fair share of the cost and expense of government." *Mid-American Growers, Inc. v. Department of Revenue*, 143 Ill. App. 3d 600, 602 (1986). Property taxation is a function of the government that the public has a right to scrutinize because, as even the Assessor's Office concedes, the process must be uniform and fair.

¶ 38   The information requested by the Tribune in this case is critical in order for the public to understand how they are being taxed. To hold that the government can withhold would be antithetical to the overarching purpose of FOIA—that public records deserve the light of public scrutiny and they are presumed to be open and accessible. *Day*, 388 Ill. App. 3d at 73. Because the Assessor's Office has failed to demonstrate how the requested records fall within the scope

of the deliberative process exemption, we find no error in the trial court's ruling that the requested records must be turned over under FOIA. To the contrary, it is apparent that the evidence on file affirmatively shows that the Assessor's Office is not entitled to the relief it seeks—the shield of the deliberative process exemption.

¶ 39                                      II. 65A reports

¶ 40     As the prior analysis makes clear, the Assessor's Office's reports do not come within the exemption under which it rejected the Tribune's FOIA request. However, the Assessor's Office argues that it should not be ordered to turn over what are known as 65A reports because the Tribune did not specifically request those reports in the FOIA request it transmitted.

¶ 41     65A reports are township-level synopses of 65D reports. The Tribune learned about the existence of 65A reports during the process of trying to get the other information subject to this appeal. In the trial court, the parties briefed and argued whether 65A reports were exempt from FOIA disclosure. The Assessor's Office relied on the same exemption, the deliberative process exemption, to argue that it was not required to produce 65A reports. It produced a 65A report for *in camera* review before the trial court's ruling.

¶ 42     The Assessor's Office has waived any objection to producing 65A reports on the basis that the Tribune failed to file a FOIA request for them or demand them in the complaint. Waiver can result from conduct inconsistent with an intent to enforce a legal right. *Phillips v. Elrod*, 135 Ill. App. 3d 70, 74 (1985). Also, arguments not raised in the trial court are waived for purposes of appeal. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 413 (2002). The Assessor's Office did not object in the trial court to producing 65A reports on the basis that they were not specifically requested in the FOIA request. Much to the contrary, the parties litigated whether the reports were exempt, the trial court considered the parties' arguments, and it ruled on the merits

of the issue. The trial court's decision to order the production of 65A reports stands.

¶ 43                                III. Attorney Fees

¶ 44    FOIA contains a fee-shifting provision that requires the court to award attorney fees and costs to a party that prevails in an action to obtain a wrongfully withheld record.

> "If a person seeking the right to inspect or receive a copy of a public record prevails in a proceeding under this Section, the court shall award such person reasonable attorney's fees and costs. In determining what amount of attorney's fees is reasonable, the court shall consider the degree to which the relief obtained relates to the relief sought." 5 ILCS 140/11(i) (West 2016).

¶ 45    The Assessor's Office argues that the Tribune's petition for attorney fees was insufficient because it simply set out that the attorney on the case spent 40.4 hours on the case and a paralegal spent 5.8 hours, but the assertions were not supported with any evidence. The Assessor's Office argues that the attorney fees awarded are in excess of the prevailing market rate and, instead of the goal of removing the burden of attorney fees on FOIA plaintiffs, the award here serves to punish the government.

¶ 46    Like other statutory attorney fee provisions, the award of attorney fees under FOIA will not be disturbed absent an abuse of discretion. *Chicago Alliance for Neighborhood Safety v. City of Chicago*, 348 Ill. App. 3d 188, 216 (2004).  Here, although the Assessor's Office argues that the evidentiary support for the petition is insufficient, it has failed to demonstrate that the trial court abused its discretion in awarding the reasonable fees requested.

¶ 47    The Act states that the trial court "shall" award attorney fees and costs to a prevailing plaintiff. 5 ILCS 140/11(i) (West 2016). The Act requires the court to consider "the degree to which the relief obtained relates to the relief sought." *Id*. Obviously, in this case, the degree of

15

the relief that the Tribune received is perfectly in line with the relief it sought. The Assessor's Office has done nothing to show that the 40.4 hours of attorney time and 5.8 hours of paralegal time in this case were unreasonable. It is an important case with difficult issues that was litigated skillfully by both sides.

¶ 48     The record makes clear that the trial court scrutinized the Tribune's requested fees and costs and found them to be reasonable. In ruling on the fee petition, the trial court stated its finding on the record that "with regard to the bills, it was perfect, in terms of time spent." In evaluating all of the considerations for awarding attorney fees, the trial court may and should rely on its own knowledge and experience when determining the reasonableness of the fees sought. *McHenry Savings Bank v. Autoworks of Wauconda, Inc.*, 399 Ill. App. 3d 104, 113 (2010). The Tribune met its burden and convinced the trial court that the requested fees were reasonable. The Assessor's Office did nothing in the trial court or on appeal to demonstrate that the awarded fees are objectively unreasonable or that the trial court otherwise erred. The Assessor's Office has failed to demonstrate that trial court abused its discretion in awarding attorney fees and costs to the Tribune.

¶ 49                                    IV. Cross-Appeal

¶ 50     The Tribune filed a cross-appeal arguing that the trial court erred when it ordered the court records in this case to be held under seal. At this point, in light of our judgment set forth above, there is no legitimate justification for keeping the court records under seal. There is no longer any concern that the Tribune or the public might gain backdoor access to the documents while judicial proceedings remain ongoing. The briefs, affidavits, and deposition testimony all reflect information that is not covered by the deliberative process exemption.

¶ 51     Customarily, there is a presumption of openness in judicial proceedings in Illinois. *Doe v.*

*Doe*, 282 Ill. App. 3d 1078, 1084 (1996). In this case, the trial court smartly limited the depositions to the subject matter of the affidavits. Because the Assessor's Office, however, has no statutory basis to withhold the subject documents, there is no longer any reason that the Tribune or the public be deprived of the records involved in this case. There is no compelling reason to keep the information sealed.

¶ 52                                    CONCLUSION

¶ 53    Accordingly, we affirm. All orders sealing documents in this case are vacated.

¶ 54    Affirmed.