# Illinois Official Reports

## Appellate Court

---

**Fisher v. Office of the Illinois Attorney General, 2021 IL App (1st) 200225**

---

| | |
|---|---|
| Appellate Court Caption | IAN H. FISHER, Plaintiff-Appellant, v. THE OFFICE OF THE ILLINOIS ATTORNEY GENERAL, by Its Attorney General, Kwame Raoul, Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>No. 1-20-0225 |
| Filed | March 12, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 19-CH-6649; the Hon. Raymond W. Mitchell, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Gillian G. Lindsay, of Hahn Loeser & Parks LLP, of Chicago, for appellant.<br><br>Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Laura Wunder, Assistant Attorney General, of counsel), for appellee. |

Panel                     JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Justices Cunningham and Rochford concurred in the judgment and opinion.

## OPINION

¶ 1       The plaintiff, Ian H. Fisher, appeals from an order of the circuit court of Cook County, which denied his motion for summary judgment and granted summary judgment in favor of the defendant, the Office of the Illinois Attorney General (OAG), on its cross-motion. On appeal, the plaintiff argues that the circuit court erred in finding that the records he requested from the OAG pursuant to the Freedom of Information Act (FOIA or Act) (5 ILCS 140/1 *et seq.* (West 2018)) were exempt from disclosure. For the reasons that follow, we affirm.

¶ 2       The following factual recitation is derived from the pleadings, motions, and exhibits of record.

¶ 3       In the fall of 2012, the OAG filed a *parens patriae* action against several cathode ray tube (CRT) manufacturers, alleging that they conspired to fix prices on certain products resulting in overcharges to Illinois consumers. See State v. Hitachi, Ltd., No. 12-CH-35266 (Cir. Ct. Cook County). Between July 2016 and March 2018, the OAG entered into settlement agreements with all of the manufacturers for a total of nearly $50 million. Each settlement agreement states that the agreement will not become final until such time as the circuit court enters a final judgment providing, *inter alia*, that the settlement funds be distributed to eligible claimants "within the discretion of the Illinois Attorney General" and each of the CRT manufacturers are dismissed with prejudice. As of yet, the circuit court has not entered such an order.

¶ 4       On November 20, 2017, the circuit court entered an order on a joint motion for approval of a notice plan. In its order, the court approved the contents of the settlement notices prepared by the OAG, preliminarily approved of the publication notice plan, and authorized the OAG to use settlement funds to pay Kurtzman Carson Consultants (KCC) to implement the notice plan and administer the claims process. Subsequently, KCC published the settlement notice to the public.

¶ 5       The plaintiff in the instant case represents several clients that submitted claims as part of the CRT settlement. Each of the plaintiff's clients filled out the claim form indicating that they purchased the CRT products in Illinois during the relevant time frame and either resided in Illinois or were incorporated or headquartered in Illinois. After several communications with KCC, the plaintiff was informed that the majority of his clients' claims did not meet the eligibility requirement because they did not purchase the CRT products "for use" in Illinois. When the plaintiff asked KCC about the requirement that the CRT product must have been purchased for use in the state, KCC responded, "Per the AG's direction, and as referenced in the Notice, eligible purchases must be for use in the state of Illinois." The plaintiff next contacted the OAG directly, arguing that the "use" requirement was contrary to the language of the settlement agreements, the claim form, the purpose of the Illinois Antitrust Act, and relevant case law construing the Illinois Antitrust Act and similar state laws. On February 22, 2019, the OAG responded to the plaintiff, rejecting his contentions.

¶ 6        On April 8, 2019, the plaintiff submitted a FOIA request to the OAG, seeking certain records related to the CRT settlement. Relevant to this appeal, the plaintiff requested the following records:

"All communications between the Office of the Attorney General and the Class Settlement Administrator, KCC Class Action Services LLC, concerning the eligibility requirements for the submission of claims for the Class Settlement in the Illinois CRT Settlement.

All communications with the Office of the Attorney General concerning whether a claimant in the Illinois CRT Settlement is required to establish that a CRT or CRT Product was either used in Illinois or purchased for use in Illinois.

All communications from the Office of the Attorney General to the Class Settlement Administrator, KCC Class Action Services LLC, instructing that one or more claims in the Illinois CRT Settlement be denied or found deficient."

¶ 7        The OAG denied the plaintiff's request for records, citing section 7(1)(f) of the Act, also known as the deliberative process exemption. Section 7(1)(f) of the Act exempts from disclosure "[p]reliminary drafts, notes, recommendations, memoranda and other records in which opinions are expressed, or policies or actions are formulated." 5 ILCS 140/7(1)(f) (West 2018). In its denial letter, the OAG stated that the responsive records "consist of communications between this office and outside consultants written for the purpose of planning courses of action with regard to assessing claims. These records are predecisional."

¶ 8        On May 31, 2019, the plaintiff filed a two-count complaint, seeking declaratory and injunctive relief based upon the OAG's denial of his FOIA request. In count I, he sought an order declaring that (1) he had a right to the production of the requested records pursuant to section 2(c) of the Act (5 ILCS 140/2(c) (West 2018)), (2) the requested records do not fall within the disclosure exemption listed under section 7(1)(f) of the Act (5 ILCS 140/7(1)(f) (West 2018)), and (3) he is entitled to reasonable attorney fees and costs. In count II, he sought an order declaring that the OAG violated the Act by withholding the requested records, enjoining the OAG from further withholding the records, and granting attorney fees and costs pursuant to section 11(i) of the Act (5 ILCS 140/11(i) (West 2018)).

¶ 9        On August 1, 2019, the OAG filed its answer and affirmative defenses to the plaintiff's complaint, asserting that the responsive records are exempt from disclosure under section 7(1)(f) of the Act (5 ILCS 140/7(1)(f) (West 2018)). The OAG also asserted that some of the responsive records were prepared "for purposes of responding to attempts by certain parties to intervene" in the CRT litigation and are therefore exempt from disclosure under section 7(1)(m) of the Act, which exempts from disclosure "materials prepared or compiled by or for a public body in anticipation of a criminal, civil or administrative proceeding upon the request of an attorney advising the public body." 5 ILCS 140/7(1)(m) (West 2018).

¶ 10        On October 7, 2019, the OAG filed an index of the responsive records, pursuant to the plaintiff's motion made under section 11(e) of the Act (5 ILCS 140/11(e) (West 2018)). Thereafter, the OAG filed its amended affirmative defenses, in which it asserted that all responsive communications were exempt from disclosure under both sections 7(1)(f) and 7(1)(m) of the Act. As to section 7(1)(m) of the Act, the OAG now asserted that the responsive records were exempt because they

"include materials prepared by [the OAG] or by KCC for [the OAG] for purposes of evaluating claims for the settlement proceeds, addressing challenges by claimants to KCC's initial determinations, and developing a final distribution plan after all claims are audited that [the OAG] will present for final approval to the court."

¶ 11 Both parties then moved for summary judgment. The plaintiff argued that he was entitled to summary judgment because the requested records did not fall within the deliberative process exemption as they were neither inter or intra-agency material, nor predecisional and deliberative agency material. He also argued that the requested records do not fall within section 7(1)(m) of the Act because he requested only communications between the OAG and KCC, not "materials" that the OAG asked KCC to prepare.

¶ 12 The OAG filed a cross-motion for summary judgment, arguing that the responsive records were exempt from disclosure under both sections 7(1)(f) and 7(1)(m) of the Act. In support of its cross-motion, the OAG attached two affidavits: one from Blake Harrop, the lead prosecuting attorney for the CRT litigation, and one from Andrew Perry, the senior project manager for KCC.

¶ 13 Harrop averred that KCC was retained "to evaluate claim forms and other material submitted by claimants in support of their claims and to provide to the OAG its opinions, analysis, and recommendations as to the validity of the claims in light of the eligibility requirements established by the OAG." Harrop acknowledged that the "vast majority" of claims did not require the OAG's day-to-day involvement, but he explained that KCC regularly advised the OAG regarding the status of the claims process and the OAG became directly involved when an issue arose or a claimant objected to KCC's initial determination. Harrop also stated that "[i]t has always been the understanding between OAG and KCC that whether to accept or deny a claim and, if accepted, the allowed amount of the claim were subject to final determination by the OAG." Perry averred that KCC performed the following functions for the OAG as claims administrator: reviewed claim forms, applied criteria to detect possible fraud, evaluated the reasonableness of a claimant's techniques to estimate the number of CRT products purchased, handled telephone and email inquiries from claimants, and audited claims. Perry explained that KCC makes the "initial determination about whether a claim should be paid," but "the OAG has the discretion to make changes to KCC's recommendation."

¶ 14 On January 28, 2020, the circuit court entered an order denying the plaintiff's motion for summary judgment and granting summary judgment in favor of the OAG on its cross motion. In its written decision, the court concluded that responsive records were exempt from disclosure under section 7(1)(f) of the Act. Specifically, the court found that "KCC was retained to provide analysis and recommendations in furtherance of the OAG's objective to distribute settlement proceeds," and therefore, the responsive documents were intra-agency material. The court rejected the plaintiff's argument that the material was not predecisional, finding instead that "KCC's work for the OAG and all of the communications resulting therefrom relate to a pending decision regarding to whom to distribute the settlement proceeds." The court also rejected his argument that KCC's work was a "ministerial application of objective [eligibility] criteria," noting that it was belied by the affidavits attached to the OAG's motion, which described the deliberative functions that KCC performed. Having found that the OAG properly withheld the materials under section 7(1)(f) of the Act, the court concluded that it did not need to determine whether the responsive records were also exempt under section 7(1)(m) of the Act. This appeal followed.

¶ 15    On appeal, the plaintiff argues that the circuit court erred when it found that the records he requested were exempt under the Act. He, therefore, asks this court to reverse the circuit court's order granting the OAG's cross-motion for summary judgment and enter judgment in his favor.

¶ 16    Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). When, as here, the parties file cross-motions for summary judgment, "they concede the absence of a genuine issue of material fact, agree that only questions of law are involved, and invite the court to decide the issues based on the record." *Stevens v. McGuireWoods LLP*, 2015 IL 118652, ¶ 11. Notwithstanding, the "filing of cross-motions for summary judgment does not establish that there is no issue of material fact, nor does it obligate a court to render summary judgment." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. Our review of the circuit court's ruling on a motion for summary judgment is *de novo*. *Stevens*, 2015 IL 118652, ¶ 11.

¶ 17    FOIA is based upon the policy that persons must be given complete access to information "regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees." 5 ILCS 140/1 (West 2018); *American Federation of State, County & Municipal Employees (AFSCME) v. County of Cook*, 136 Ill. 2d 334, 341 (1990). Like its federal counterpart, FOIA requires full disclosure unless the desired information is exempted under clearly delineated statutory language. *Lieber v. Southern Illinois University*, 279 Ill. App. 3d 553, 560 (1996); see also *United States Department of Defense v. Federal Labor Relations Authority*, 510 U.S. 487 (1994). When the government claims an exemption, it must prove that the exemption applies by clear and convincing evidence. 5 ILCS 140/11(f) (West 2018).

¶ 18    In the instant case, the OAG initially denied the plaintiff's request, claiming that the responsive records were exempt from disclosure under section 7(1)(f) of the Act. In its amended affirmative defenses, the OAG asserted that the responsive documents were exempt from disclosure under both sections 7(1)(f) and 7(1)(m) of the Act. The court below found that the documents were exempt under section 7(1)(f) of the Act and, therefore, did not reach the issue of whether they were also exempt under section 7(1)(m) of the Act. We address first the OAG's contention that the responsive documents are exempt under section 7(1)(f) of the Act.

¶ 19    Section 7(1)(f) of the Act states that the government is entitled to withhold "preliminary drafts, notes, recommendations, memoranda and other records in which opinions are expressed, or policies or actions are formulated." 5 ILCS 140/7(1)(f) (West 2018). This provision is "the equivalent of the 'deliberative process' exemption found in section 552(b)(5) of the federal Freedom of Information Act, which exempts from disclosure inter- and intra-agency predecisional and deliberative material." *Harwood v. McDonough*, 344 Ill. App. 3d 242, 247 (2003). The deliberative process exemption expresses the public policy favoring the confidentiality of predecisional materials and "is intended to protect the communications process and encourage frank and open discussion among agency employees before a final decision is made." *Harwood*, 344 Ill. App. 3d at 248. Thus, in order to be exempt under this provision, the responsive materials must be both (1) inter-agency or intra-agency and (2) predecisional and deliberative.

¶ 20    As to the first requirement, that the materials must be either inter or intra agency, there is no dispute that the communications between the OAG and KCC are not inter-agency materials,

as KCC is an outside consultant and not a government agency. However, communications between government agencies and an outside consultant may be considered intra-agency material for the purposes of the deliberative process exemption if the outside consultant's analyses and recommendations " 'played essentially the same part in an agency's process of deliberation as documents prepared by agency personnel might have done.' " *Harwood*, 344 Ill. App. 3d at 248 (quoting *Department of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 10 (2001)). For communications with outside consultants to qualify as "intra-agency," the consultant may not represent independent interests of its own apart from those of the agency. *Harwood*, 344 Ill. App. 3d at 248.

¶ 21    The plaintiff maintains that the requested materials are not intra-agency material because KCC was hired by the OAG to perform an administrative function, not to provide expert advice. The OAG responds that the plaintiff's contentions ignore the affidavits it attached in support of its cross-motion for summary judgment, averring that KCC provided it with analysis and recommendations regarding to whom to distribute the settlement proceeds, which it will ultimately use to create the final settlement distribution plan. We agree with the OAG.

¶ 22    To demonstrate that the requested records fall within an exemption, and to assist the court in making its determination, a public body must provide a detailed explanation for claiming an exemption, specifically addressing the requested documents in a manner allowing for adequate adversarial testing. *Watkins v. McCarthy*, 2012 IL App (1st) 100632, ¶ 13. "The trial court shall require the agency to create as full a public record as possible concerning the nature of the documents and the justification for nondisclosure without compromising the secret nature of the information." *Baudin v. City of Crystal Lake*, 192 Ill. App. 3d 530, 542 (1989). Furthermore, a public body can satisfy its burden only by providing objective indicia that an exemption applies under the circumstances. See *Illinois Education Ass'n v. Illinois State Board of Education*, 204 Ill. 2d 456, 470 (2003).

¶ 23    Pursuant to section 11(f) of the Act, the circuit court "shall conduct such in camera examination of the requested records as it finds appropriate to determine if such records or any part thereof may be withheld under any provision of this Act." 5 ILCS 140/11(f) (West 2018); *Illinois Education Ass'n*, 204 Ill. 2d at 469. Our supreme court has interpreted this section to mean "the circuit court need not conduct an *in camera* review where the public body meets its burden of showing that the statutory exemption applies by means of affidavits." *Illinois Education Ass'n*, 204 Ill. 2d at 469. "Affidavits submitted by an agency are accorded a presumption of good faith ***." (Internal quotation marks omitted.) *BlueStar Energy Services, Inc. v. Illinois Commerce Comm'n*, 374 Ill. App. 3d 990, 997 (2007). Affidavits will not suffice, however, "if the public body's claims are conclusory, merely recite statutory standards, or are too vague or sweeping." *Illinois Education Ass'n*, 204 Ill. 2d at 469.

¶ 24    After reviewing the OAG's supporting affidavits, we conclude that they are not conclusory or vague and are, therefore, sufficient to carry its burden of proving that the responsive records are intra-agency materials. Harrop stated in his affidavit that the OAG could have handled all aspects of the claims process internally, but it instead hired KCC to initially evaluate submitted claims and provide its "opinions, analyses, and recommendations as to the validity of the claims in light of the eligibility requirements established by the OAG." According to Harrop, KCC regularly discusses matters relating to the settlement claims with the OAG, including issues that arise with particular claims. Perry further elaborated on KCC's role in the claims process, stating in his affidavit that KCC "reviewed claim forms, applied criteria to detect

possible fraud, evaluated the reasonableness of a claimant's techniques to estimate the number of CRT products purchased, handled telephone and email inquiries from claimants, and audited claims." We conclude, therefore, that KCC performed essentially the same function in the OAG's deliberative process as the OAG would have performed if it had chosen to perform the preliminary review of each claim. We also conclude that, in performing this function, KCC represented only the interests of the OAG. Accordingly, the responsive materials constitute intra-agency material for the purposes of the deliberative process exemption.

¶ 25    The plaintiff nevertheless contends that the "contract" between the OAG and KCC, along with several comments made by the OAG and KCC in the CRT litigation, refutes the OAG's "after-the-fact attempts to shoehorn" its relationship with KCC into the deliberative process exemption. According to him, the contract confirms that KCC was nothing more than "a third party hired to perform an administrative function." He also points out that both the OAG and KCC made certain prior statements suggesting that KCC alone was responsible for determining a claimant's eligibility. Essentially, the plaintiff's argument is that the OAG's affidavits should be viewed with suspicion. We find the plaintiff's contentions in this regard unavailing.

¶ 26    To begin, we reiterate that affidavits are assumed to be in good faith. *BlueStar Energy Services, Inc.*, 374 Ill. App. 3d at 997. Moreover, contrary to the plaintiff's contentions, there is nothing in either the contract or in the prior statements it cites that is at odds with the affidavits of Harrop and Perry. For example, the contract states, under scope of services, that KCC will "ensure that all settlement agreement requirements have been satisfied and approve or deny individual class claims" and then "provide the appropriate parties with the approved claimants list, including the distribution calculations for each claim." The contract also states that KCC would notify claimants whose claims were rejected. Put simply, this general description of KCC's services does not conflict with the affidavits. Both the contract and the affidavits acknowledge that KCC would be responsible for initially determining a claimant's eligibility based on the requirements supplied by the OAG, which the OAG would then use to help it prepare a final distribution plan to submit to the circuit court. The affidavits merely provide a more detailed look at how KCC went about performing that function.

¶ 27    The plaintiff also argues that, even if the communications between KCC and the OAG are intra-agency material, they still fall outside of the deliberative process exemption because they do not contain predecisional and deliberative material. "[T]o qualify for the deliberative process exemption, a document must be both predecisional in the sense that it is actually antecedent to the adoption of an agency policy and deliberative in the sense that it is actually related to the process by which policies are formulated." *Chicago Tribune Co. v. Cook County Assessor's Office*, 2018 IL App (1st) 170455, ¶ 28.

¶ 28    According to the plaintiff, the withheld records do not contain predecisional material because the OAG already made its final decision regarding to whom to distribute the settlement proceeds when it entered into the settlement agreements and published the settlement notice. He also contends that the determination as to whether specific claimants meet the eligibility requirements set forth in the notice is an administrative decision, not a deliberative one. The OAG responds that publication of the settlement notice did not end its deliberative process because it still needed to determine which claimants satisfied the eligibility requirements and what amount each claimant was owed. According to the OAG, that deliberative process is not final until it submits a distribution plan to the circuit court for approval, per the terms of the settlement agreements. The OAG also responds that the plaintiff's contention that determining

whether claimants are eligible is an administrative decision, not a deliberative one, ignores the affidavits of Harrop and Perry. We once again agree with the OAG.

¶ 29    Each of the individual settlement agreements state that the terms of the agreement are not final until such time as the circuit court enters a final judgment providing, *inter alia*, that the settlement funds be distributed to eligible claimants "within the discretion of the Illinois Attorney General" and each of the CRT manufacturers are dismissed with prejudice. As Harrop stated in his affidavit, the OAG has not yet submitted the final distribution plan to the court. Consequently, no final determination has been made regarding which claimants met the eligibility requirements and what amount they are owed. We conclude, therefore, that the requested communications between the OAG and KCC are predecisional because they are antecedent to the OAG adopting and submitting a final distribution plan to the circuit court.

¶ 30    We also find that the responsive records are deliberative material because the communications between the OAG and KCC are related to the process by which the OAG formulates its policies. According to the settlement agreements, the OAG is responsible for developing a plan to distribute the settlement funds to eligible claimants. Although the published notice set forth requirements for participation in the settlement, the final distribution plan necessarily requires a determination as to which claimants satisfied those requirements and what amount they are owed. Rather than evaluate each of the claims on its own, the OAG retained a third party, KCC, to make an initial determination subject to its approval. To that end, KCC reviewed claims and then made recommendations to the OAG, involving the OAG directly only when there was an issue or a claimant objected to the initial determination. We conclude, therefore, that the records responsive to the plaintiff's request are part of the OAG's process for creating its final distribution plan in the CRT litigation. Accordingly, the OAG properly withheld the records under section 7(1)(f) of the Act.

¶ 31    Having so determined, we need not address whether the records were also exempt from disclosure under section 7(1)(m) of the Act.

¶ 32    Based on the foregoing analysis, we affirm the judgment of the circuit court of Cook County.

¶ 33    Affirmed.