# Illinois Official Reports

## Appellate Court

<div style="border:1px solid black">

*Chicago Public Media v. Cook County Office of the President,*
**2021 IL App (1st) 200888**

</div>

| | |
|---|---|
| Appellate Court Caption | CHICAGO PUBLIC MEDIA, Plaintiff-Appellant, v. THE COOK COUNTY OFFICE OF THE PRESIDENT, Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>No. 1-20-0888 |
| Filed | June 25, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 18-CH-13891; the Hon. Anna H. Demacopoulos, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part. |
| Counsel on Appeal | Joshua Burday, Matthew Topic, Merrick Wayne, and Shelley Geiszler, of Loevy & Loevy, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Cathy McNeil Stein, Silvia Mercado Masters, and Martha-Victoria Jimenez, Assistant State's Attorneys, of counsel), for appellee. |

| Panel | JUSTICE ROCHFORD delivered the judgment of the court, with opinion. |
|---|---|
| | Justices Hoffman and Cunningham concurred in the judgment and opinion. |

**OPINION**

¶ 1      Plaintiff-appellant, Chicago Public Media, requested the production of records under the Freedom of Information Act (FOIA or Act) (5 ILCS 140/1 *et seq.* (West 2018)), relating to a political action committee that was chaired by a commissioner of the Cook County Board of Commissioners (CCB). In response, defendant-appellee, Cook County Office of the President (OCCP), produced numerous documents with redactions, which OCCP asserted were exempt under FOIA. Plaintiff filed an action alleging a willful violation of FOIA and requested declaratory and injunctive relief against OCCP. The parties filed cross-motions for partial summary judgment. After an *in camera* inspection of the records at issue, the circuit court denied plaintiff's motion for partial summary judgment, except for one specific record, and granted partial summary judgment in OCCP's favor, except for the same record. After a motion for rehearing, the circuit court found that certain redacted material on another record was not exempt and should be produced. Plaintiff has appealed and argues that the court erred in finding that the remaining withheld material was exempt under sections 7(1)(f) and 7(1)(m) of FOIA (*id.* § 7(1)(f), (m)). We agree with plaintiff that the asserted exemptions did not apply.

¶ 2      On July 20, 2018, Dan Mihalopoulos, on behalf of plaintiff, submitted an initial request under FOIA by letter to Laura Lechowicz Felicione, Special Counsel and FOIA Officer of OCCP. Plaintiff sought

> "[a]ny and all correspondences, written or electronic, that contain the key words 'Cause the Effect' or 'Off the Sidelines' and were sent by Cook County Commissioner Bridget Gainer or any of the following employees of the Cook County Board of Commissioners: Margaret Cox, [Catherine] Sabo, Abin Kuriakose, Michaela Vargas, [or] Marty Malone."

¶ 3      Cause the Effect Chicago (formerly known as Off the Sidelines Chicago) is a registered political action committee founded and chaired by Bridget Gainer, a commissioner of the CCB. Catherine Sabo, a former employee of the CCB, acted as treasurer. The organization seeks to encourage and empower women to attain public offices and "to effect change" on issues that matter to women.

¶ 4      In a July 27, 2018, letter to Mihalopoulos, pursuant to section 3(e)(vii) of the Act (*id.* § 3(e)(vii)), Felicione extended the time for OCCP to respond to the request by five days as there was a "need for consultation *** among two or more components of a public body having a substantial interest in the determination or in the subject matter of the request." In a July 31, 2018, letter, Felicione informed Mihalopoulos that the request was unduly burdensome and asked him to narrow the request. Subsequent to these letters, Felicione and Mihalopoulos conferred by telephone. Felicione informed Mihalopoulos that the requested documents were on "two separate tracks," with the vast majority of the records on the personal e-mail server of Commissioner Gainer and others on the Cook County e-mail system. The Cook County Bureau of Technology can only generate records that are on the county system. After their discussions,

plaintiff agreed to narrow its request to the period of time after January 1, 2015. OCCP agreed that it would produce responsive e-mails that were on the Cook County e-mail server by August 10, 2018, and Commissioner Gainer would produce a log of her private e-mails.

¶ 5    In the meantime, on August 1, 2018, plaintiff submitted a second request to OCCP for "[a]ny and all correspondences written or electronic, between the Office of the President or its employees and Cook County Commissioner Bridget Gainer or her staff since July 19, 2018, regarding [Mihalopoulos's] Freedom of Information Act request to the Office of the President filed on July 20, 2018."

¶ 6    On August 10, 2018, in response to the first request, OCCP produced all of the responsive e-mails (88 pages of e-mail records), which had been located on the Cook County e-mail system. OCCP redacted personal information (private e-mail addresses and cell phone numbers) pursuant to sections 7(1)(b) and 7(1)(c) (*id.* § 7(1)(b), (c)) and other material (alleged to be deliberative) under section 7(1)(f) (*id.* § 7(1)(f)).

¶ 7    OCCP had responded previously to the second request, on August 9, 2018, and produced nine e-mail records, which had been located on the Cook County system. OCCP redacted private e-mail addresses pursuant to sections 7(1)(b) and 7(1)(c) and attorney communications pursuant to section 7(1)(m) (*id.* § 7(1)(m)).

¶ 8    On November 7, 2018, plaintiff filed suit alleging that OCCP, in responding to each of its requests, willfully violated FOIA. Plaintiff sought an order directing OCCP to produce material that had been withheld or redacted and an award of attorney fees and penalties. In its answer, OCCP denied that it had violated the Act and raised affirmative defenses that the redacted material at issue was exempt from disclosure and that certain of the requested records were not in its possession or control.

¶ 9    Subsequent to the filing of the complaint, Commissioner Gainer, on November 13, 2018, provided OCCP with more than 3000 pages of responsive e-mail records that had been located on her personal server. In lieu of the promised log from the commissioner, OCCP submitted these documents to plaintiff the next day with redactions for private e-mail addresses and cell phone numbers and names of minors pursuant to sections 7(1)(b) and 7(1)(c). It appears that at this point, OCCP had produced all of the responsive e-mails from both servers and only redactions were still at issue.

¶ 10    The parties moved for partial summary judgment. In its motion, plaintiff asserted that OCCP had not met its burden of proving by clear and convincing evidence that the redacted information was exempt under sections 7(1)(f) and 7(1)(m) of FOIA. Plaintiff did not challenge the redactions of personal information under sections 7(1)(b) and 7(1)(c).

¶ 11    In its cross-motion and response, OCCP argued that there was no evidence of willful conduct on its part in responding to the requests and that the withheld information was exempt under FOIA. In support of its cross-motion, OCCP submitted the affidavit of Felicione in which she set forth the steps taken by OCCP to comply with plaintiff's requests.

¶ 12    OCCP contended that many of the e-mails, which were produced in response to the first request, contained back-and-forth discussions between Commissioner Gainer and others as to how to best disseminate information to the public. OCCP maintained that the redactions were exempt under section 7(1)(f) because they contained preliminary drafts of talking points, media strategy discussions, and proposed media content.

¶ 13       OCCP further argued that the material redacted in response to the second request contained communications among Felicione; Brandon Brooks, special assistant for legal affairs of the Cook County Bureau of Technology; Commissioner Gainer; and her attorney, Burt Odelson. OCCP claimed the redactions were protected under section 7(1)(m).

¶ 14       Plaintiff, in reply to its motion and in response to the cross-motion, maintained that section 7(1)(f) does not apply to discussions with individuals who were not employed by the county (Sabo and Rikeesha Phelon) that do not involve the development of government policy or that pertain to media strategy or talking points. Plaintiff explained that Phelon operates Phelon Public Strategies, a consulting firm that had received payments from Citizens for Bridget Gainer. Additionally, plaintiff asserted that OCCP had not met its burden of establishing that the exemption of section 7(1)(m) applied, in that Felicione's affidavit did not offer justification for asserting this exemption. Plaintiff asked the circuit court to review the unredacted records *in camera* to determine whether section 7(1)(m) applied to e-mails involving Odelson.

¶ 15       In its reply, OCCP cited federal law and decisions of the Illinois Public Access Counselor in support of its position that section 7(1)(f) applied to discussions and drafts of possible media strategies, talking points, and responses to media requests for information. OCCP also maintained that it had properly asserted the exemption of section 7(1)(m) to the content of e-mails with Felicione, Commissioner Gainer, Brooks, and Odelson, which contained legal advice to OCCP and Commissioner Gainer regarding plaintiff's FOIA requests. OCCP "welcome[d] an *in camera* inspection of the unredacted emails to demonstrate that its exemption claim is proper."

¶ 16       After conducting a hearing on the cross-motions for partial summary judgment, on September 19, 2019, the circuit court entered an order taking the cross-motions under advisement and directing OCCP, "for the reasons stated on the record," to produce the challenged records for an *in camera* examination. The record on appeal does not contain a transcript of the September 19, 2019, hearing.

¶ 17       At a hearing on October 28, 2019, the circuit court explained that it had done an *in camera* examination of the challenged records from the Cook County e-mail system. The court noted that based on the arguments at the September 19 hearing, the e-mails from Commissioner Gainer's personal e-mail account were not "before this Court for determination." The court found that, as to the material which was redacted under section 7(1)(f), the exemption protected all but one document. The court also found that OCCP had properly asserted the exemption of section 7(1)(m). Based on those findings, the court granted plaintiff's motion for partial summary judgment as to only one record, an e-mail containing a press release about a conference at which Commissioner Gainer spoke, and denied the motion as to all other records. Similarly, OCCP's cross-motion was denied as to the same e-mail record but granted for every other record at issue.

¶ 18       Plaintiff filed a motion to reconsider. After a hearing, the motion was granted only as to a portion of the redacted material on one e-mail that contained talking points about Off the Sidelines.

¶ 19       The circuit court granted plaintiff's motion for a finding under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) on August 5, 2020. This appeal followed. The unredacted e-mail records at issue from the Cook County system have been filed under seal with this court.

¶ 20       On appeal, plaintiff argues that the redacted material contained in the responsive documents is not protected by FOIA. Specifically, plaintiff contends that section 7(1)(f) does

not apply to (1) e-mails discussing media strategy; (2) Cause the Effect, a political action committee; (3) edits to Commissioner Gainer's Wikipedia page; and (4) e-mails that include Sabo, who was no longer employed by Cook County, and Phelon, an outside consultant not hired by the county. Plaintiff maintains that the discussions "bear no connection to governance" or to the formation of government policy. Additionally, plaintiff asserts that section 7(1)(m) does not apply because OCCP did not show that attorney Odelson represented only Cook County.

¶ 21    Summary judgment may be entered where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). As the parties here filed cross-motions for summary judgment, they have " 'concede[d] the absence of a genuine issue of material fact, agree[d] that only questions of law are involved, and invite[d] the court to decide the issues based on the record.' " *Fisher v. Office of the Attorney General*, 2021 IL App (1st) 200225, ¶ 16 (quoting *Stevens v. McGuireWoods LLP*, 2015 IL 118652, ¶ 11). We conduct a *de novo* review of a ruling on a motion for summary judgment. *Bank of New York Mellon v. Wojcik*, 2019 IL App (1st) 180845, ¶ 19.

¶ 22    "[T]he purpose of the FOIA is 'to open governmental records to the light of public scrutiny.' " *Watkins v. McCarthy*, 2012 IL App (1st) 100632, ¶ 13 (quoting *Bowie v. Evanston Community Consolidated School District No. 65*, 128 Ill. 2d 373, 378 (1989)). Under the Act, public records are presumed to be open and accessible. *Heinrich v. White*, 2012 IL App (2d) 110564, ¶ 8. FOIA is to be liberally construed to achieve its goal of "provid[ing] the public with easy access to government information." *Southern Illinoisan v. Illinois Department of Public Health*, 218 Ill. 2d 390, 416 (2006). A public body "must comply with a valid request for information unless one of the narrow statutory exemptions set forth in section 7 of FOIA applies." *Watkins*, 2012 IL App (1st) 100632, ¶ 13. The issue of whether an exemption applies is generally a matter of statutory construction and reviewed *de novo*. *Lucas v. Prisoner Review Board*, 2013 IL App (2d) 110698, ¶ 15.

¶ 23    The CCB is considered a public body as it is the main governing body of Cook County. See 55 ILCS 5/2-6001 *et seq.* (West 2018). The 17 commissioners of the CCB are elected by the voters of the county. *Id.* § 2-6001. From the candidates for commissioner, the voters vote for or designate one of the candidates to act as president of the CCB. *Id.* § 2-6002.

¶ 24    An individual who has been denied access to records may file an action in the circuit court for injunctive or declaratory relief. *Chicago Tribune Co. v. Department of Financial & Professional Regulation*, 2014 IL App (4th) 130427, ¶ 23 (citing 5 ILCS 140/11(a) (West 2010)). The public body has the burden to prove, by clear and convincing evidence, that the requested records fall within an exemption. 5 ILCS 140/11(f) (West 2018). This burden is met when the public agency " 'provide[s] a detailed justification for its claim of exemption, addressing the requested documents specifically and in a manner allowing for adequate adversary testing.' " (Emphasis omitted.) *Illinois Education Ass'n v. Illinois State Board of Education*, 204 Ill. 2d 456, 464 (2003) (quoting *Baudin v. City of Crystal Lake*, 192 Ill. App. 3d 530, 537 (1989)). Section 11(f) of FOIA (5 ILCS 140/11(f) (West 2018)) requires the circuit court to review the request for documents *de novo* and conduct an *in camera* examination of the requested records as it finds appropriate to determine if the records, or any part thereof, may be withheld under any provision of the Act. *Southern Illinoisan*, 218 Ill. 2d at 418.

However, an *in camera* inspection is not necessary "where the public body meets its burden of showing that the statutory exemption applies by means of affidavits." *Illinois Education Ass'n*, 204 Ill. 2d at 469 (citing *Williams v. Klincar*, 237 Ill. App. 3d 569, 572-73 (1992), and *Baudin*, 192 Ill. App. 3d at 538).

¶ 25 Before beginning our analysis, we note that Felicione's affidavit fails to set forth justification with specificity for asserting a claim of exemption under either section 7(1)(f) or 7(1)(m) for each of the challenged records. In her affidavit, after explaining the steps that OCCP took to comply with plaintiff's requests, Felicione stated that she reviewed the documents responsive to each request and "made proper redactions as allowed under the FOIA." She cited the applicable sections of the Act and used the language of those sections to describe the redactions in general. Because the affidavit failed to make a showing that the asserted exemptions applied to the records, the circuit court was required to conduct its *in camera* inspection. See *id.* ("if the public body's claims are conclusory, merely recite statutory standards, or are too vague or sweeping," affidavits will not suffice to satisfy the public body's burden of proof).

¶ 26 We begin by considering plaintiff's argument that the withheld material was not protected by section 7(1)(f) of FOIA.

¶ 27 Section 7(1)(f) exempts from disclosure:

"Preliminary drafts, notes, recommendations, memoranda and other records in which opinions are expressed, or policies or actions are formulated, except that a specific record or relevant portion of a record shall not be exempt when the record is publicly cited and identified by the head of the public body." 5 ILCS 140/7(1)(f) (West 2018).

¶ 28 As we explained in *Fisher*,

"[t]his provision is 'the equivalent of the "deliberative process" exemption found in section 552(b)(5) of the federal [FOIA], which exempts from disclosure inter- and intra-agency predecisional and deliberative material.' [Citation.] The deliberative process exemption expresses the public policy favoring the confidentiality of predecisional materials and 'is intended to protect the communication process and encourage frank and open discussion among agency employees before a final decision is made.' " *Fisher*, 2021 IL App (1st) 200225, ¶ 19 (quoting *Harwood v. McDonough*, 344 Ill. App. 3d 242, 247-48 (2003)).

For the exemption to apply, "the responsive materials must be both (1) inter or intra agency and (2) predecisional and deliberative." *Id.* "[A] document must be both predecisional in the sense that it is actually antecedent to the adoption of an agency policy and deliberative in the sense that it is actually related to the process by which polices are formulated." *Chicago Tribune Co. v. Cook County Assessor's Office*, 2018 IL App (1st) 170455, ¶ 28. In applying and interpreting section 7(1)(f), we may look to federal case law. See *State Journal-Register v. University of Illinois Springfield*, 2013 IL App (4th) 120881, ¶ 21 (citing *Harwood*, 344 Ill. App. 3d at 248).

¶ 29 OCCP asserted the deliberative process exemption when it responded to the first request. Pursuant to section 7(1)(f), OCCP redacted portions of the following e-mails: (1) a March 7, 2018, e-mail from Marty Malone, Director of External Affairs for Commissioner Gainer, to Micaela Vargas, the chief of staff for the commissioner, containing a press release for the University of Illinois at Chicago (UIC) newspaper about a Women in Business Conference

held at the college on that date; (2) a January 30, 2018, e-mail from Malone to Vargas and a second e-mail sent later that day by Malone to Vargas, Commissioner Gainer, and Sabo, with track edits of the commissioner's Wikipedia page; (3) January 8 and January 9, 2018, e-mails from Malone to Vargas and Commissioner Gainer, containing draft answers for questions to be posed by a reporter about recent women's marches; (4) a March 6, 2018, e-mail from Vargas to Commissioner Gainer and Sabo, containing a draft of the commissioner's speech for the Women in Business Conference at the UIC; and (5) a March 4, 2018, e-mail from Vargas to Phelon, containing talking points relating to a variety of job issues.

¶ 30　　As to the redactions on the March 7, 2018, e-mail, the court, in deciding the cross-motions for partial summary judgment, found this material was not protected, as the press release about the UIC conference was not antecedent to that event. The court on rehearing also ordered the production of only a portion of the redactions to the March 4, 2018, e-mail, which contained talking points about Off the Sidelines Chicago. OCCP did not appeal from those decisions.

¶ 31　　According to OCCP, the challenged redactions, which are at issue, contain discussions about media strategy and the manner of providing information to the public. The parties dispute whether the deliberative process exemption applies to such discussions. They have not cited any applicable Illinois law, and there is a split of federal authority on this issue. Plaintiff relies on those federal decisions finding that communications about ways to present or message existing government policies or actions to the public, while deliberative, do not involve the type of governmental decisions that were intended to be protected by the deliberative process exemption. See, *e.g.*, *Fox News Network, LLC v. United States Department of the Treasury*, 739 F. Supp. 2d 515 (S.D.N.Y. 2010) (*Fox News I*). Under these cases, those types of records may be withheld only where they would reveal "internal agency deliberations on substantive policy matters" not yet finalized. *Fox News Network, LLC v. United States Department of the Treasury*, 911 F. Supp. 2d 261, 277 (S.D.N.Y. 2012) (*Fox News II*).

¶ 32　　OCCP, on the other hand, relies on cases such as *Bloche v. Department of Defense*, 370 F. Supp. 3d 40 (D.D.C. 2019), and *Seife v. United States Department of State*, 298 F. Supp. 3d 592 (S.D.N.Y. 2018). The court in *Bloche* recognized that

"courts have repeatedly found the deliberative process privilege 'to cover agency deliberations about how to respond to media inquiries regarding prior agency actions, as well as discussions about press coverage of existing agency policies, and suggested talking points about how to answer questions regarding the duties assigned to agency employees.' " *Bloche*, 370 F. Supp. 3d at 51-52 (quoting *Competitive Enterprise Institute v. United States Environmental Protection Agency*, 12 F. Supp. 3d 100, 118 (D.D.C. 2014)).

See also *Judicial Watch, Inc. v. United States Department of Homeland Security*, 736 F. Supp. 2d 202, 208 (D.D.C. 2010); *Citizens for Responsibility & Ethics in Washington v. United States Department of Labor*, 478 F. Supp. 2d 77, 83 (D.D.C. 2007); *Judicial Watch, Inc. v. United States Department of Commerce*, 337 F. Supp. 2d 146, 174 (D.D.C. 2004). These courts reasoned that " 'internal deliberations about public relations efforts are not simply routine operational decisions: they are "deliberations about policy, even if they involve 'massaging' the agency's public image." ' " *Bloche*, 370 F. Supp. 3d at 52 (quoting *Committee on Oversight & Government Reform, United States House of Representatives v. Lynch*, 156 F. Supp. 3d 101, 111 (D.D.C. 2016), quoting *ICM Registry, LLC v. United States Department of Commerce*, 538 F. Supp. 2d 130, 136 (D.D.C. 2008)). The evaluation of alternative methods of presenting

policies and actions to the public "may require input by many working components within the agency, or even an analysis of the underlying policy itself." *Seife*, 298 F. Supp. 3d at 616.

¶ 33　　However, the court in *Bloche* warned that defendants must present "sufficiently detailed justification for all of the documents that they claim to be privileged" (*Bloche*, 370 F. Supp. 3d at 53), including, for example, identifying "an internal *policy-orientated* decisionmaking process" and the "possible public communication being planned to an outside entity" that would allow a court to determine whether the records "reflect the formulation or exercise of *** policy-orientated *judgment*" (emphases in original and internal quotation marks omitted) (*id.* at 54). The court in *Seife* also instructed that the public body must show that it is applying the deliberative process privilege to "press *policy* discussions." (Emphasis in original.) *Seife*, 298 F. Supp. 3d at 619. Discussions amounting to "routine operating decision[s]" do not fall within the exemption, even if they involve public or press relations. (Internal quotation marks omitted.) *Id.* In other words, even if public agencies "could claim that a messaging strategy itself is a policy decision for purposes of the [deliberative process] privilege, as *Seife* would allow, they would still have to describe that strategy with specificity and explain the significance of the communications at issue to the agency's decision-making process." *Morales v. City of New York*, No. 18cv1573 (JGK) (DF), 2019 WL 6213059, at *4 (S.D.N.Y. Nov. 21, 2019).

¶ 34　　In sum, under the line of cases relied on by plaintiff, discussions categorized as public relations or media strategy, *i.e.*, discussions on how to present an entity's policies to the public, are subject to the deliberative process exemption only in so far as they reveal the status or deliberation of an underlying substantive government policy or action. *Seife*, 298 F. Supp. 3d at 615 (citing *Citizens Union of the City of New York v. Attorney General of New York*, 269 F. Supp. 3d 124, 165 (S.D.N.Y 2017); *Fox News I*, 739 F. Supp. 2d at 545). Under the line of authorities cited by OCCP, records involving media strategy and the dissemination of public information are exempted if the public body presents sufficient justification with detailed submissions that the records are "both predecisional and deliberative, by explaining, for example, the 'function and significance [of the document] in the agency's decisionmaking process.'" (Internal quotation marks omitted.) *Seife*, 298 F. Supp. 3d at 617 (quoting *Fox News II*, 911 F. Supp. 2d at 276). We do not need to decide which cases to follow, as OCCP's claims of exemption under 7(1)(f) fail under either line of decisions.

¶ 35　　With the above legal framework in mind, we first consider the two January 30 e-mails containing track edits to the Wikipedia page of Commissioner Gainer. A Wikipedia page is an entry or article contained on Wikipedia, a free online encyclopedia which is hosted by Wikimedia Foundation. See *Wikipedia: About*, Wikipedia, https://en.wikipedia.org/wiki/Wikipedia:About (last visited June 11, 2021) [https://perma.cc/JA2U-GFA9]. Volunteers create and edit its content. *Id.*

¶ 36　　OCCP did not offer factual support or justification as to its claim that the two e-mails with the track edits of Commissioner Gainer's Wikipedia page are reflective of a deliberative process. The e-mails themselves do not contain discussions of any kind. The track edits are to a Wikipedia page that provides basic biographical information about the commissioner, including a description of her political career and involvement with Off the Sidelines and Cause the Effect. The track edits alone do not reflect predecisional communications about any substantive governmental policy or actions or about a policy relating to the dissemination of information. Additionally, the edits relate to factual content on the commissioner's Wikipedia

page. "Purely factual material must be disclosed under FOIA once a final decision has been made, unless the factual material is inextricably intertwined with predecisional and deliberative discussions." *Chicago Tribune Co.*, 2018 IL App (1st) 170455, ¶ 32 (citing *State Journal-Register*, 2013 IL App (4th) 120881, ¶ 27).

¶ 37    Next, we consider the January 8 and 9 e-mails relating to draft answers to questions to be posed by a reporter to Commissioner Gainer about recent women's marches in Chicago and Washington D.C. An unredacted e-mail dated January 5, 2018, from the reporter to Malone, reveals that the reporter wished to ask the commissioner her "thoughts [on the marches] as founder of Cause the Effect." At least from the reporter's perspective, the questions were not specifically meant to elicit information about any position the county or the CCB may have as to the marches. The questions were not seeking information about any governmental policy or action, and the redacted e-mail and draft answers do not reveal any deliberative process as to any substantive government policy. Furthermore, there is no basis or justification for finding the communications about the draft answers relate to the formulation of public relations or press policy for the CCB or the county.

¶ 38    We next consider the e-mail with the redacted draft of Commissioner Gainer's speech to the women's business conference at UIC. The e-mail containing the draft speech preceded the date of the conference. However, there is no basis or justification for finding that the draft of the speech is part of a process relating to the formulation of any public relations policy of the county or the CCB, and the speech does not reveal the process of developing any substantive government policy or action.

¶ 39    The final e-mail at issue under section 7(1)(f) has the subject "Jobs.dox," contains talking points, and was sent by Vargas to Phelon. We find the analysis in *Seife* instructive. See *Seife*, 298 F. Supp. 3d at 620.

¶ 40    In examining a document containing "talking points," which was withheld under the federal deliberative process exemption, the *Seife* court noted that the public agency had not provided specificity about the record, the relationship of the author and the recipient, the date of preparation of the talking points, and the function and significance of the talking points in the agency's process for decision making. *Id.* (citing *Wilderness Society v. United States Department of the Interior*, 344 F. Supp. 2d 1, 14 (D.D.C. 2004)). Additionally, the agency had not shown whether the talking points were in draft or final form and whether the talking points had been used by the agency. *Id.* (citing *Brennan Center for Justice at New York University School of Law v. United States Department of Justice*, 697 F.3d 184, 195 (2d Cir. 2012)). Without this information, the court was unable to conclude that the talking points were an essential part of a " 'consultative process' " or, if released, would prematurely or incorrectly disclose the agency's view. *Id.* (quoting *Grand Central Partnership v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999)).

¶ 41    Similarly, OCCP has failed to present any of the details that *Seife* found necessary to determine whether the talking points there were protected. The e-mail between Vargas and Phelon contains no discussion or communication on the talking points. Vargas merely states in the unredacted portion of the e-mail: "[this] is a combined google doc with [ ] talking points in the topics." We do not know the relationship of Vargas and Phelon, an outside consultant, as to the talking points, whether the talking points were in draft or final form, and whether they were used and if so by whom and in what setting. There is no indication in the record whether the talking points were part of a process for developing policy or action for communicating

- 9 -

information about jobs for the county or the CCB. The talking points include points about job "plans" but, for the most part, appear to be about plans in existence or for which county legislation had already passed or had been introduced. We are without any information to conclude that the talking points reveal the deliberative process for any future substantive policy or action on jobs by the CCB.

¶ 42     We conclude that OCCP failed to meet its burden to establish that the challenged redactions at issue pertain to the deliberative process for the development of governmental policy or action relating to the dissemination of information and failed to show that the production of the redacted information would reveal the deliberative process for any underlying substantive policy. Therefore, under either line of federal authority discussed above, the deliberative process exemption would not be applicable to the redacted material at issue. Furthermore, OCCP failed to meet the burden, required by Illinois law, to present sufficient justification for its claim that section 7(1)(f) protected the withheld information. See *Illinois Education Ass'n*, 204 Ill. 2d at 464; 5 ILCS 140/11(f) (West 2018) ("Any public body that asserts that a record is exempt from disclosure has the burden of proving that it is exempt by clear and convincing evidence.").

¶ 43     We now turn to consider whether material was properly redacted under section 7(1)(m) of the Act.

¶ 44     Section 7(1)(m) exempts:

> "[c]ommunications between a public body and an attorney or auditor representing the public body that would not be subject to discovery in litigation, and materials prepared or compiled by or for a public body in anticipation of a criminal, civil or administrative proceeding upon the request of an attorney advising the public body." 5 ILCS 140/7(1)(m) (West 2018).

Section 7(1)(m) must be construed and applied narrowly, notwithstanding the public policy favoring confidentiality between attorneys and clients. *Illinois Education Ass'n*, 204 Ill. 2d at 470.

¶ 45     The public body has the burden to "provid[e] some *objective* indicia that the exemption is applicable under the circumstances." (Emphasis in original.) *Id.* The public entity must "establish both that: (1) [the attorney] was 'representing' the [public body]; and (2) the communications would not be 'subject to discovery in litigation.' " *Id.* at 464 (" '[c]ommunications between a public body and an attorney or auditor representing the public body that would not be subject to discovery in litigation' " (quoting 5 ILCS 140/7(1)(n) (West 2000))). Our supreme court has defined a privileged communication as a communication

> "(1) where legal advice of any kind is sought, (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are permanently protected, (7) from disclosure by himself or the legal advisor, (8) except the protection [can] be waived." *Id.* at 467 (citing *Fischel & Kahn, Ltd. v. Van Straaten Gallery, Inc.*, 189 Ill. 2d 579, 584 (2000), *In re Himmel*, 125 Ill. 2d 531, 541 (1988), and *People v. Adam*, 51 Ill. 2d 46, 48 (1972)).

The public body "may not simply treat the words 'attorney-client privilege' or 'legal advice' as some talisman, the mere utterance of which magically casts a spell of secrecy over the documents at issue." *Id.* at 470.

¶ 46    "*[I]n camera* review by the circuit court is the most effective way for the public body to objectively demonstrate that the exemption claimed does, in fact, apply." *Id.* at 471 (citing *Baudin*, 192 Ill. App. 3d at 543 (McLaren, J., concurring) ("The trial court should be hesitant in determining a privilege exists based solely on the affidavits submitted by the defendant, for without an *in camera* review there is no external means to verify the truthfulness of the affidavits ***.")).

¶ 47    At issue are e-mails responsive to the second request. OCCP redacted portions of the following e-mails: (1) a July 28, 2018, e-mail from Felicione to Commissioner Gainer and Odelson, with the subject: "Monday Call at 11"; (2) a string of e-mails dated July 31, 2018 (all with the subject: "Draft Request to Confer - Confidential Attorney Work Product"), beginning with an e-mail from Felicione to Commissioner Gainer and Odelson, which attached an unredacted draft of Felicione's letter to Mihalopoulos dated July 31, 2018, requesting to meet and confer to narrow the scope of the first request, with a responding e-mail from Odelson to Felicione and an e-mail from Felicione to Rachel Dailey of OCCP; and (3) a July 31, 2018, e-mail from Felicione to Brooks, Commissioner Gainer, and Dailey about "FOIA Request."

¶ 48    Initially, we note that OCCP's claim of an attorney-client exemption centers solely on attorney Odelson and not on Felicione in her role as Special Counsel to OCCP. However, the July 31, 2018, e-mail from Felicione to Dailey about FOIA request was neither received nor sent by Odelson, and our review of the e-mail shows that it contains no confidential legal communications. We find that OCCP has not established that this e-mail was exempt under section 7(1)(m).

¶ 49    As to the e-mails involving Odelson, plaintiff argues that the Felicione affidavit fails to establish that Odelson was retained by or represented the county and does not provide a detailed justification for asserting an exemption under section 7(1)(m). OCCP responds that "the sufficiency of the [Felicione] affidavit alone is irrelevant" in that the circuit court conducted an *in camera* inspection and based its decision on the affidavit and the content of the e-mails. OCCP maintains that "the content of the emails establishes the nature of the discussion and the relationship between Mr. Odelson and Commissioner Gainer." We disagree with OCCP.

¶ 50    OCCP has never offered substantiation to define the existence or nature of Odelson's relationship to OCCP, the CCB, or Commissioner Gainer with respect to plaintiff's FOIA requests. From our review of the e-mails, we could find no factual basis for concluding that an attorney-client relationship of any kind existed. OCCP did label the string of e-mails discussing the draft letter to Mihalopoulos "Confidential Attorney Work Product." However, our review of these e-mails and the other responsive e-mails does not lead to a conclusion that there was an attorney-client relationship between Odelson and the CCB, OCCP, or the commissioner as to plaintiff's FOIA requests. And our review did not show that any redacted material involved confidential legal advice from Odelson.

¶ 51    We conclude that OCCP has not met its burden of establishing that section 7(1)(m) protected the redacted material at issue.

¶ 52    For the reasons stated, we reverse the denial of the plaintiff's cross-motion for summary judgment (see *supra* ¶¶ 35-42, 47-51) and affirm the granting of plaintiff's cross-motion for summary judgment (see *supra* ¶ 30) as to certain records. We reverse the granting of OCCP's cross-motion for summary judgment (see *supra* ¶¶ 35-42, 47-51) and affirm the denial of

OCCP's cross-motion for summary judgment (see *supra* ¶ 30) as to certain records.

¶ 53        Affirmed in part and reversed in part.